IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NOVA CASUALTY COMPANY,<br>Plaintiff, | ) | |
| V. | ) | No. 04-1665C<br>(Judge Lettow) |
| THE UNITED STATES,<br>Defendant. | ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NEIL B. CONNELLY, ESQ.
Attorney for Plaintiff
99 Church Street
White Plains, NY 10601
(914) 328-4100

electronically filed
April 8, 2005

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT……..……………………………………….. 4

ISSUES PRESENTED ……………….…………………………………… 5

1. Does the plaintiff's complaint set forth a cause of action for damages arising out of the defendant's payment of $25,303.50 to Eagle Management?

2. Does the Coastguard's February 14, 2005 CONTRACTING OFFICER'S FINAL DECISION contain a claim for money against the plaintiff that is alleged to due and owing?

3. Does Nova have the right to appeal the CONTRACTING OFFICER'S FINAL DECISION to this Court?

STATEMENT OF FACTS ………………………………………………… 5

ARGUMENT…………………………………………………………….. 10

THE DEFENDANT'S FIRST ARGUMENT FOR DISMISSAL OF THE PLAINTIFF'S COMPLAINT HAS BEEN OVERCOME BY THE AMENDED COMPLAINT, AND BY THE DEFENDANT'S ACTIONS SINCE THE FILLING OF THIS ACTION ………….. 10

THE CONTRACTS DISPUTE ACT OF 1978 CONFERS JURISDICTION UPON THE UNITED STATES COURT OF FEDERAL CLAIMS WHERE THERE IS A CLAIM FOR MONEY DAMAGES ARISING OUT OF A GOVERNMENT CONTRACT …………. 13

NOVA HAS A GOOD FAITH DEFENSE TO THE COAST GUARD'S CLAIM, AND IS ENTITLED TO BE HEARD ON THE MERITS ………………………………………………. 14

THE WUNDERLICH ACT AND THE FIFTH AMENDMENT TO THE CONSTITUTION PROVIDE THAT NOVA IS ENTITLED TO A FORUM IN WHICH TO BE HEARD ….. 16

CONCLUSION……………………………………..…………………. 19

# TABLE OF AUTHORITIES

## CASES

Page

Insurance Co. of the West v. United States
243 F. 3d 1367 (Fed. Cir. 2001) ........................................................ 11, 12

Solesbee v. Balkcom, 339 U.S. 9 (1950) ……………………………………... 18

United States v. Carlo Bianchi and Company
3.73 U.S. 709 (1963) ……………………………………………........... 17

## STATUTES

41 U.S.C.A § 601 ……………………………………………………………….. 3

41 U.S.C.A. § 321 …………………………………………………..… 3, 9, 12, 16

40 U.S.C. § 270a ……………………………………………………………... 4

28 U.S.C.A. § 1498 ………………………………………………………….... 12

## RULES

Rules of the United States Court of Federal Claims, Rule 15(a) ………………,… 8, 10

## TREATISES

Restatement of the Law, Third,
Suretyship and Guaranty, §§ 37-49 …………………………...………..… 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------------------------------------------X

NOVA CASUALTY COMPANY,

Plaintiff,

-against-

THE UNITED STATES,

Defendant.

-------------------------------------------------------------------X

No. 04-1665C

**(JUDGE LETTOW)**

Electronically Filed
April 8, 2005

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in opposition to defendant United States of America's ("United States") Motion to Dismiss the complaint filed by Nova Casualty Company ("Nova"). The United States' Motion should be denied for the following reasons:

a) this Court possesses exclusive subject matter jurisdiction over Nova's claim because it is a claim for money against the United States founded upon an express or implied contract with the United States that is subject to 41 U.S.C.A. §601 et, seq., the Contracts Disputes Act;

b) 41 U.S.C.A. §321, also referred to as the "Wunderlich Act", provides a forum in the United States Court of Federal Claims for appealing final decisions made by a Contracting Officer on a government project; and

c) the United States is seeking to prevent Nova from obtaining a hearing in any forum on the merits of its claim for breach of contract by the United States that has discharged Nova of its Performance Bond obligations, and on its appeal from a Contracting Officers Final decision.

## ISSUES PRESENTED

1. Does the plaintiff's amended complaint set forth a cause of action for monetary damages arising out of the defendant's payment of $25,303.50 to Eagle Management in violation of plaintiff's rights as a Miller Act surety?

2. Does the Coast Guard's February 14, 2005 Final Decision contain a claim upon plaintiff for money that the defendant alleges to be presently due and owing?

3. Does the plaintiff have the right to appeal the Coast Guard's February 14, 2005 Final Decision to this court?

## STATEMENT OF FACTS

The material facts, upon which Nova's opposition to defendant's motion to dismiss is based, are summarized as follows. In June 2002, Eagle Management Enterprises, Inc. ("Eagle Management") entered into contract No. DTCGG1-01-C-3WK143 ("Prime Contract") with the United States Coast Guard ("Coast Guard") to perform certain construction work at the Coney Island Lighthouse in Brooklyn, New York, including the painting of the Lighthouse. As a condition of the Prime Contract, and in accordance with the Miller Act, 40 U.S.C. § 270a, Eagle Management requested, and Nova issued performance and payment bonds, in the respective penal sums of $138,000.00 for the benefit of the United States, as obligee. As partial consideration for

Nova's execution of performance and payment bonds at its request, Eagle Management executed a General Agreement of Indemnity in favor of Nova, a copy of which is filed herewith as Exhibit "A". Under the terms of the General Agreement of Indemnity, Eagle Management expressly assigned to Nova, and declared Nova to be subrogated to, all of Eagle Management's rights under any contract for which Nova issued its bonds, and on which Eagle Management failed to complete its contract obligations, or otherwise caused a claim to be asserted against Nova's bonds.

In furtherance of the work to be performed on the Prime Contract, Eagle Management contracted with Metron Environmental Limited ("Metron") to, inter alia, paint the Lighthouse. On January 14, 2003, the Coast Guard approved and accepted the painting of the Coney Island Lighthouse as being in compliance with the terms of the Prime Contract. A copy of the Contracting Officer's January 14, 2003, letter is filed herewith as Exhibit "B".

However, on June 20, 2003, the Coast Guard noticed that the Lighthouse appeared "blotchy", and demanded that Eagle Management cure the defects. In an attempt to ascertain the Coast Guard's basis for determining that the paint's application was the cause of the Lighthouse's blotchy appearance, numerous written and oral requests were made upon the Contracting Officer, Mr. John O'Boyle ("Mr. O'Boyle"), to provide evidence in support of the Coast Guard's position. The Coast Guard has never provided any basis for the reversal of its January 14, 2003 finding that the painting of the Lighthouse complied with the requirements of the Prime Contract. On February 17, 2004, the Coast Guard issued a Contracting Officer's Final Decision in which it declared that Eagle Management's failure to re-paint the Lighthouse was not excusable, and that

the Coast Guard would have the repairs performed by others, with the resultant costs charged to Eagle Management, or its surety (Nova). Filed herewith as Exhibit "C" is a copy of the Contracting Officer's Final Decision dated February 17, 2004.

On October 8, 2004, Mr. O'Boyle wrote to Nova, advising it that the Coast Guard had awarded a contract in the amount of $22,805.00 to Verrazano Contracting Co., Inc., for the re-painting of the Coney Island Lighthouse. The stated purpose of the contract was to correct, "the deficient work originally performed by Eagle Management". The letter further stated that upon completion of the Verrazano contract, the Coast Guard would make a claim for the extra procurement costs against Eagle Management as well as the Performance Bond surety, Nova. A copy of Mr. O'Boyle's October 8, 2004 letter to Nova is filed herewith as Exhibit "D".

Based upon the Coast Guard's determination that the painting of the Lighthouse had been defectively performed, Eagle Management was unable to make payment to Metron. Metron thereafter brought suit in the United States District Court for the Eastern District of New York against both Eagle Management and Nova. *United States of America ex rel Metron Environmental Limited v. Eagle Management Enterprises and Nova Casualty Company*, Civil Action No. CV-03-1952. In a deposition conducted during discovery in that litigation, Metron's president has testified, under oath, that Metron performed its work in accordance with the Prime Contract specifications, and that the work was inspected and accepted by the Coast Guard in January 2003. That case is presently scheduled for trial before Magistrate Judge Cheryl Pollak on July 11, 2005.

Nova filed a third-party complaint in the United States District Court for the Eastern District of New York against the United States for reimbursement and

indemnification with respect to Metron's claims. However, the Department of Justice argued that the United States Court of Federal Claims has exclusive subject matter jurisdiction over claims against the United States arising out of the contract between the Coast Guard and Eagle Management. Nova's third-party action in the Federal District Court against the United States was therefore discontinued without prejudice on November 5, 2004. Subsequently, Nova instituted the present action in the United States Court of Federal Claims on November 11, 2004.

After the filing of the complaint in this action, Mr. O'Boyle sent a letter dated November 26, 2004, to the Law Office of Neil B. Connelly, as attorney for Nova, in which he advised Nova, for the first time, that the Coast Guard had "erroneously made an additional payment to Eagle in the amount of $25303.50 in July 2003…" That letter went on to state that the Coast Guard would be demanding payment from Eagle Management in the sum of $22,245.05, and that if Eagle Management did not comply with that demand, "the Coast Guard will look to the surety for satisfaction under the terms of Eagle's Performance Bond". A copy of Mr. O'Boyle's November 26, 2004 letter is filed herewith as Exhibit "E".

On February 14, 2005, the Coast Guard issued another Contracting Officer's Final Decision in which the Coast Guard declared that Eagle Management had failed to perform corrective work on the Coney Island Lighthouse, and that Eagle Management and/or Nova are responsible for the additional costs, in the sum of $22,245.05, incurred in hiring a substitute contractor to repaint the Lighthouse. The February 14, 2005 Contracting Officer's Final Decision stated that, in lieu of an appeal to the Board of Contract Appeals, an action may be brought directly to the United States Court of

Federal Claims. Filed herewith as Exhibit "F" is a copy of the Contracting Officer's Final Decision dated February 14, 2005.

On March 4, 2005, Nova, through counsel, forwarded to the Contracting Officer, Mr. O'Boyle, written objections to his February 14, 2005, Final Decision. A copy of the March 4, 2005 letter to Mr. O'Boyle from the Law Office of Neil B. Connelly, Nova's attorney, is filed herewith as Exhibit "G". On March 8, 2005, several weeks after the monetary demand on Nova contained in the Coast Guard's February 14, 2005 Final Decision, the United States brought the within Motion to Dismiss Nova's original complaint arguing: a) that there is no jurisdiction in this Court because this Court cannot issue a declaratory judgment and there is no monetary claim due and owing; and b) Nova cannot bring a claim in this Court due to a lack of privity with the United States.

Simultaneously with the filing of these opposition papers, Nova has filed an amended complaint in this proceeding. A copy of the amended complaint has also been filed herewith as Exhibit "H". The filing of the amended complaint is as of course, pursuant to Rule 15(a) of the Rules of the United States Court of Federal Claims ("RCFC"), in that no responsive pleading to Nova's complaint has been served. The amended complaint alleges a cause of action for breach of contract by the Coast Guard due to its payment of $25,303.50 to Eagle Management after the discovery of the blotches on the Lighthouse, notice of which was first provided to Nova on November 26, 2004, after the filing of the complaint. The Amended complaint also appeals to this Court from the February 14, 2005 Contracting Officer's Final Decision, per the Final Decision's directive.

It is not disputed that the United States Court of Federal Claims has exclusive subject matter jurisdiction over this claim because, a) it arises out of a contract subject to the Contract Dispute Act, b) the Contracting Officer's Final Decision includes a claim for money damages, and c) an appeal may be taken to this court from the Contracting Officer's Final Decision. It is also undisputed that the Coast Guard has asserted a claim against Nova's Performance Bond. Nevertheless, the United States argues that neither the United States District Court for the Eastern District of New York, nor the United States Court of Federal Claims has jurisdiction over this matter, so that there is no forum in which Nova rights, remedies, claims, and defenses may be heard. The Wunderlich Act, 41 U.S.C.A. § 321, and the Fifth Amendment to the United States Constitution regarding due process, provide that Nova is entitled to a forum in which it can be heard on the merits of its case. For the reasons set forth herein, the United States' Motion to Dismiss Nova's complaint must be denied.

## ARGUMENT

### THE DEFENDANT'S FIRST ARGUMENT FOR DISMISSAL OF THE PLAINTIFF'S COMPLAINT HAS BEEN OVERCOME BY THE AMENDED COMPLAINT, AND BY THE DEFENDANT'S ACTIONS SINCE THE FILLING OF THIS ACTION

The defendant's motion to dismiss is based on two distinct arguments. The first is that this Court does not have jurisdiction over Nova's demand for declaratory relief, and that this Court does not have jurisdiction over claims for money that are not presently due and payable. The second basis for the defendant's motion is its assertion that Nova has failed to state a claim upon which relief can be granted because Nova is not in privity with the Coast Guard, and because Nova is not equitably subrogated to the rights of a contractor who does have privity.

The defendant's first argument is overcome by Nova's amended complaint, and by the Contracting Officer's February 14, 2005 Final Decision, with its monetary demand upon Nova for the sum of $22,245.05. The amended complaint, filed as of right under RCFC § 15(a), does not include a demand for a declaratory judgment. It does, however, seek a reversal on appeal to this court of the Contracting Officer's February 14, 2005 Final Decision. Such a right of appeal is provided to Nova, against whom a demand for payment is made, under the Wunderlich Act, discussed below.

The February 14, 2005 Contracting Officer's Final Decision (Exhibit "F") was sent to Eagle Management and Nova, and included a demand for payment of $22,245.05, the costs incurred by the Coast Guard in hiring a substitute contractor to repaint the Lighthouse. Yet, the United States argues in its March 8, 2005 motion papers that there is no claim for money presently due and owing. It is respectfully submitted that the documents before this court, and the allegations of the amended complaint, fully satisfy the condition of an existing claim for money. The Contracting Officer also included in the Final Decision a statement notifying the recipients of their right to appeal his Final Decision to the United States Court of Federal Claims. The amended complaint has exercised that right of appeal.

The second argument set forth by the defendant's motion to dismiss is simply incorrect, both as to the facts and the law. With respect to the assertion of a lack of privity, the surety's rights in this matter do not derive from Metron, Eagle Management's subcontractor, but from Eagle Management itself. The February 17, 2004 Contracting Officer's Final Decision, and the February 14, 2005 Contracting Officer's Final Decision, have placed Nova "in the shoes" of the contractor, Eagle Management. Unlike a payment

bond claim, where the right to assert a claim is bestowed upon third-party beneficiaries, e.g., subcontractors, suppliers and laborers on a construction project, a performance bond claim is a direct right asserted by the bond obligee, here the Coast Guard, against the surety. The Coast Guard demanded that the surety undertake the performance of the terminated contract. A completing surety has the right to demand compliance by the obligee of its obligations under the terminated contract, with those obligations running to the surety who "stands in the shoes" of the contractor.

The controlling decision with respect to privity and sovereign is *Insurance Co. of the West v. United States*, 243 F.3d 1367 (Fed. Cir. 2001) where the Federal Circuit Court of Appeals stated:

> Waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant.
>
> Neither the Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant. The Federal Tort Claims Act waives immunity as to "claims against the United States, for money damages,…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person would be liable to the claimant". 28 U.S.C. § 1346(b). So too, the Tucker Act waives sovereign immunity for "any claim against the United States founded … upon any express or implied contract with the United States." 28 U.S.C. § 1491 (a)(1). The language of both acts contains an unequivocal expression waiving ***1374** sovereign immunity as to claims, not particularly to claimants.
> *Insurance Co. of the West v. United States*, 243 F.3d at 1373-4

On the basis of the foregoing, the defendant's argument for a strict limitation of Nova's subrogation rights must be rejected. Under the terms of the General Indemnity Agreement executed by Eagle Management in favor of Nova (Exhibit "A"), a voluntary subrogation of Eagle Management's Prime Contract rights to Nova was contractually created in circumstances such as those present in this matter, i.e., a claim exists that Eagle Management failed to complete the contract to which Nova's bond attached. See, Exhibit "A", Paragraph 8. As Eagle Management's voluntary subrogee, and as the surety against whom a performance bond claim has been asserted, Nova has standing to object to the United States' impairment of the surety's collateral. Restatement of the Law, Third, Suretyship and Guaranty, §§ 37-49. Moreover, Nova has a statutory right to appeal to this court from the Contracting Officer's Final Decision under the Wunderlich Act, 41 U.S.C. § 321.

**THE CONTRACTS DISPUTE ACT OF 1978 CONFERS JURISDICTION UPON THE UNITED STATES COURT OF FEDERAL CLAIMS WHERE THERE IS A CLAIM FOR MONEY DAMAGES ARISING OUT OF A GOVERNMENT CONTRACT**

The Contract Disputes Act of 1978 provides a system of legal and administrative remedies for resolving Government contract claims. The Tucker Act, 28 U.S.C.A. § 1498, establishes a waiver of the Government's sovereign immunity to allow contractors or "those that stand in their shoes" to commence suit against the Government in the United States Court of Federal Claims. *Insurance Co. of the West v. United States*, *Id.* at 1372. While the Contract Disputes Act of 1978 has traditionally provided a forum for contractors and the Government to resolve disputes, contractor's sureties have also availed themselves of the Disputes Act's remedies where they have been called upon to assume performance bond obligations. *Id*. at 1370.

The United States Court of Federal Claims has exclusive subject matter jurisdiction over Nova's claims. First, the Government's Final Decision, in which the surety is named and served with a copy, refers to the right to appeal the Final Decision. Second, Nova's claims fall within the class of claims intended to be heard by the United States Federal Court of Claims and which are founded upon an express or implied contract with the United States that is subject to the Contract Disputes Act of 1978. Nova's dispute, as set forth in its amended complaint, arises from the demand made by the Coast Guard in its Final Decision that Nova satisfy its performance bond obligations by paying for the repainting of the Lighthouse. All of the elements necessary for this court to exercise jurisdiction in this matter are present, and the defendant's motion to dismiss must be denied.

## NOVA HAS A GOOD FAITH DEFENSE TO THE COAST GUARD'S CLAIM, AND IS ENTITLED TO BE HEARD ON THE MERITS

When the Coast Guard effectively terminated its contract with Eagle Management in February 2004, the Coast Guard demanded that Nova proceed with the repainting of the Lighthouse. Nova examined the Coast Guard's claim, as it is entitled to do, and asked the Contracting Officer for the information he used in determining that Eagle Management had failed to properly paint the Lighthouse. No such information was forthcoming. Eagle Management had notified Nova of the Coast Guard's January 2003 acceptance of the Lighthouse, and further notified Nova that the Lighthouse had been painted in accordance with the Prime Contract plans and specifications. In the absence of any evidence to support the Coast Guard's claim, Nova, in the exercise of good faith, denied the Coast Guard's Performance Bond claim.

In Mr. O'Boyle's November 26, 2004 letter to Nova's attorney (Exhibit "E"), the Coast Guard again declared its intent to demand payment from Nova under its performance bond. Mr. O'Boyle also stated, with respect to the blotchy condition of the paint job that, "The Coast Guard surmises that in the process of taking down the scaffolding, the subcontractor performed 'touch ups' with either contaminated paint or paint of a different color". Other than the Coast Guard's "surmise", no information to support the Coast Guard's finding of defective work by the painting subcontractor has been produced.

The Coast Guard's claim against Nova under the Performance Bond is valid if, and only if, Eagle Management failed to fulfill its obligations under the Prime Contract. The controlling language of the Performance Bond, a copy of the face page of which is filed herewith as Exhibit "I", provides that:

> "The above obligation is void if the Principal … (a)(1) Performs and fulfills all undertakings, covenants, terms, conditions, and agreements of the contract…"

The documents submitted herewith demonstrate that the painting of the Lighthouse was accepted by the Coast Guard in January 2003, and then rejected by the Coast Guard in June 2003, because of the appearance of "blotches" on the Lighthouse. There is no evidence provided with the Contracting Officer's February 17, 2004 and February 14, 2005 Final Decisions concerning the cause of the "blotches" on the Lighthouse, nor is there any indication that the Contracting Officer attempted to discover that cause. The Contracting Officer apparently assumed, or surmised, that the "blotches" resulted from a defect in performance by Eagle Management. Contradicting that assumption is the Coast Guard's earlier observance, inspection, and acceptance of Eagle

Management's painting of the Lighthouse. In addition, the painting subcontractor, Metron, has testified, under oath, that it met with the paint manufacturer before commencing its work, and that it performed the painting of the Lighthouse in accordance with the Prime Contract specifications and the instructions of the paint manufacturer. In the presence of such uncontroverted facts, common sense would lead one to consider whether the Prime Contract specifications as to the paint itself were sufficient to achieve the desired results. Unfortunately, it appears that the Contracting Officer arbitrarily assumed that its January 2003 acceptance of the painting of the Lighthouse had been a mistake, and he demanded that the contractor remedy its faulty performance.

The burden of proving a claim under the terms of Nova's Performance Bond rests with the Coast Guard. It has been, and continues to be, Nova's position that the Coast Guard has failed to meet its burden, even on a prima facie basis. Moreover, despite Nova's numerous requests for information, the Contracting Officer's Final Decision failed to include any documentary or other verifiable evidentiary to support the assumption that the exterior painting of the Coney Island Lighthouse had been defectively performed. For these reasons, Nova seeks relief in this Court to appeal the Contracting Officer's Final Decision because the Final Decision is wholly insufficient, without a rational basis, and is not supported by substantial evidence.

## THE WUNDERLICH ACT AND THE FIFTH AMENDMENT TO THE CONSTITUTION PROVIDE THAT NOVA IS ENTITLED TO A FORUM IN WHICH TO BE HEARD

As noted above, a third-party action commenced by Nova against the Coast Guard in the United States District Court for the Eastern District of New York was discontinued, without prejudice, in response to the Coast Guard's assertion of a lack of subject matter

jurisdiction. In that proceeding, the Coast Guard argued that all disputes arising out of the Prime Contract could only be heard in the United States Court of Federal Claims. That position is based on the Contract Disputes Act of 1978, which applies to the Prime Contract and grants exclusive jurisdiction over contracts under its purview to this Court. It does not appear that the Coast Guard has changed its position with respect to subject matter jurisdiction over the Prime Contract.

At this time, however, the Coast Guard argues that Nova, the surety on the Performance Bond that incorporated the Prime Contract by reference, does not have standing to appear in this court due to a lack of privity with the United States. That position has been taken with full knowledge of the fact that the Coast Guard terminated the Prime Contract in February 2004, and that a demand for payment of $22,245.05 was made by the Coast Guard upon Nova in February 2005. It appears to be the position of the Coast Guard that, as the obligee on Nova's Performance Bond, it can materially breach the underlying Prime Contract, and thereafter assert a claim against the Performance Bond. Meanwhile, the surety is compelled to respond to claims resulting directly from the Coast Guard's breach of the Prime Contract, and the surety has no forum in which the Coast Guard's breach of contract (an absolute defense to the Coast Guard's Performance Bond claim) can be heard.

The Wunderlich Act, 41 U.S.C.A. § 321, provides in pertinent part:

> No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud

> by such official or his said representative or board is alleged: Provided, however, That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

The legislative purpose of the Wunderlich Act was to ensure adequate judicial review of administrative decisions on claims arising out of government contracts also subject to the Contracts Disputes Act of 1978. *United States v. Carlo Bianchi and Company*, 373 U.S. 709, 714, 83 S.Ct. 1409, 1413 (1963). Further, the standards of review adopted in the Wunderlich Act, i.e., “arbitrary”, “capricious” and “substantial evidence”, were proposed so as to remedy the practice of many government agencies’ in failing to provide the contractor with evidence in support of the Government’s position. *Id* at 717.

In this instance, Nova is entitled to judicial review of the Contracting Officer’s Final Decision and declaration of Eagle Management’s default. Although the United States has argued that Nova has no privity of contract with the United States, and as such lacks in personam jurisdiction to bring this claim before the United States Court of Federal Claims, such an argument raises an issue of constitutional law. Under the Fifth Amendment to the United States Constitution, a person cannot be deprived of property without due process of law. However, the Coast Guard has taken the position that Nova’s property, i.e., the penal sums of its performance and payment bonds, can be taken without Nova having the opportunity to object to any court.

It is respectfully submitted that the United States' efforts to deny Nova an opportunity to be heard violate Nova's Fifth Amendment rights to Due Process. As the Supreme Court has stated:

> It is now the settled doctrine of this Court that the Due Process Clause embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due Process is that which comports with the deepest notions of what is fair and right and just.
> Solesbee v. Balkcom, 339 U.S. 9, 16 (1950) (Justice Frankfurter dissenting).

It would be unfair, wrong, and unjust to find that there is no court to which Nova can turn for relief. Such cannot be the statutory scheme envisioned by the Tucker Act, the Miller Act, and the Wunderlich Act. This court should not deny Nova an opportunity to be heard on the merits of its dispute with the Coast Guard.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss the plaintiff's complaint should be denied.

Respectfully submitted,

s/ Neil B. Connelly

Neil B. Connelly, Esq.
Attorney for Plaintiff
99 Church Street, 4th Floor
White Plains, New York 10601
914-328-4100
Fax 914-684-0401

Electronically filed: April 8, 2005.