**NOVA**
NOVA CASUALTY COMPANY

180 Oak Street
Buffalo, New York 14203-1610

# GENERAL AGREEMENT OF INDEMNITY

WHEREAS Eagle Management Enterprises, Inc.
requires or may hereafter require suretyship upon certain bonds or obligations of suretyship and has applied or may hereafter apply to the Nova Casualty Company, 180 Oak Street, Buffalo, New York 14203-1610 (hereinafter called the Company) to execute such instruments as Surety.

NOW THEREFORE, should the Company execute or procure the execution of the suretyship for which application is now pending, or which may be hereafter applied for, or other suretyship in lieu thereof, or in lieu of suretyship now outstanding, or in connection therewith, the undersigned, hereinafter called the Indemnitor, does (if there be more than one Indemnitor, they jointly and severally and for each other do), in consideration thereof, hereby undertake and agree:

1. That the Indemnitor will pay, or cause to be paid, to the Company, as and when each and every such bond or obligation is executed, the premium therefore in accordance with the regular scheduled rates of the Company then in force, and annually thereafter (except when the initial premium is scheduled as a term premium) pay to the Company the annual premium therefore in accordance with such rates until the Indemnitor shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from such suretyship and any and all renewals and extensions thereof.

2. That the Indemnitor will perform all the conditions of each said bond or obligation, and any and all alterations, modifications, renewals, continuations, and extensions thereof, and will at all times indemnify and save the Company harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, payable on demand of Surety, whether actually incurred or not, (including fees of special counsel whenever by the Company deemed necessary) expense, suit, order judgment and adjudication whatsoever, and any and all liability therefore, sustained or incurred by the Company by reason of having executed or procured the execution of said bonds or obligations, and will place the Company in funds to meet same before it shall be required to make payment, and in case the Indemnitor requests the Company to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Company, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein.

3. That the suretyship is for the special benefit of the Indemnitor and the Indemnitor's property now owned or hereafter acquired and the income and earnings thereof, from all of which the Company shall be entitled to indemnity; and the Indemnitor represents that it is specially and beneficially interested in the subject of any such suretyship, in the suretyship required and the continuation thereof.

4. That the Company shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from its Suretyship, and in the absence or default of its Indemnitor the Company may, at its option, exercise all rights of said Indemnitor, and should it make any payment, shall have every right and remedy of the Indemnitor for the recovery of the same.

5. That the Company shall have the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefore to the Company.

KNIGHTSBRIDGE
Copy

6. That this agreement shall not, nor shall acceptance by the Company of payment for its suretyship, nor agreement to accept, nor acceptance by it at any time of other security, nor assent by it to any act of the Indemnitor named in any suretyship obligation, or of any person acting on behalf of the Indemnitor, in any way abridge, defer or limit its right to be subrogated to any right or remedy, nor limit nor abridge any right or remedy which the Company otherwise might or may have, acquire, exercise or enforce, nor create any liability on the part of the Company which would not exist were this agreement not executed.

7. That the liability of the Indemnitor shall not be discharged by any change in penalty, amount of terms of any bond or obligation executed on the security hereof, or by any change in the Obligee therein; or by any and all alterations, modifications, renewals, continuations, and extensions thereof; and the Company is hereby authorized to correct any mistakes in and to execute any substitutes for said bonds or obligations with the same or different conditions, provisions, amounts and Obligees, it being hereby agreed that this instrument shall in all its terms apply accordingly. The Company is hereby authorized to attach hereto a copy of any bond or obligation secured by this agreement, and to fill up any blanks left herein or therein, and to correct any errors in filling up any such blanks or in the descriptions of said bonds or obligations.

8. That in the event any such bond be given in connection with a contract of the Indemnitor for construction work, the Indemnitor hereby dedicates all plant and material owned or acquired by it and used for the performance of such contract to the performance of the same and further agrees in the event of failure to complete or carry on such contract to assign and does hereby assign to the Company, all right, title and interest of the Indemnitor in and to all the tools, plant, equipment and materials of every nature and description, including as well materials purchased for or chargeable to such contract, which may be in process of construction, or storage elsewhere, or in transportation to said site; and the Indemnitor further agrees to assign and does hereby assign to said Company, all of the former's rights in and to all subcontracts which may be entered into and the materials embraced therein appertaining to said contract; and the Indemnitor further agrees in the event of any breach or default on his part in any of the provisions of said contract and/or bond that the said Company, shall be subrogated to all the rights and properties of the Indemnitor in such contract, including deferred and reserved payments, current and earned estimates and final payments, and any and all monies and securities that may be due and payable at the time of such default on said contract or any other contract of the Indemnitor or any one or more of them on which the Company is or may become surety, or on account of extra work or materials supplied in connection therewith, or that may thereafter become due and payable on account of said contract or any other contract of the Indemnitor on which the Company is or may become surety. And the Indemnitor hereby authorizes the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any monies due on such contracts and to disburse the proceeds thereof.

9. If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof Indemnitor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust Funds, whether in the possession of the Indemnitor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also insures to the benefit of the Surety for any liability or loss it may have to sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

10. That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

11. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Indemnitor, or the appointment of a receiver or trustee for the Indemnitor, or the property of the Indemnitor, or in the event of an assignment for the benefit of creditors of the Indemnitor, or if any action is taken by or against the Indemnitor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement

proceedings be filed by or against the Indemnitor under said Act, or if any action is taken by or against the Indemnitor under the insolvency laws of any state, possession or territory of the United States the Surety shall have the right, at its option and sole discretion and is hereby authorized with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

12. At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

13. Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Indemnitor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

14. The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Indemnitor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Indemnitor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

15. The Indemnitor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

16. That in the event of any claim or demand being made by the Company against Indemnitor, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

17. That all the terms and conditions of this agreement shall stand for the protection of any co-surety, any reinsuring company or any other surety procured by the Nova Casualty Company, whether the Nova Casualty Company does or does not execute or retain any portion of any such bond or obligation.

18. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

19. That the Indemnitor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitor and the Indemnitors, accepted or released other agreements of Indemnity or collateral in connection with the execution or procurement of said Bonds, from the Indemnitor or Indemnitors or others, it being expressly understood and agreed by the Indemnitor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitor and the Indemnitors and/or other under any such other or additional agreements of Indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

20. That application to the Company to execute or procure any such bond or obligation of suretyship may be made by the Indemnitor or the President, Vice President, Secretary, Treasurer, General Manager or any other Officer, Agent or Employee of the Indemnitor. Such applications, whether made on forms supplied by the Company or by letter, by telegraph, by personal interview or by telephone, may be regarded as sufficient and ample authority for the Company to execute or procure any such bond or obligation of suretyship.

21. In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Indemnitor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

22. The Indemnitor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation to exercise all of the rights of the Indemnitor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Indemnitor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

23. This Agreement may be terminated by the Indemnitor or Indemnitors upon thirty days written notice sent by registered mail to the Surety at its home office at 180 Oak Street, Buffalo, N.Y. 14203-1610 but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitor or the Indemnitors as to the Bonds that may have been theretofore executed.

24. The word "Indemnitor" or pronouns referring to said word appearing in this agreement, whether singular or plural, are to be construed as referring to the Indemnitor, though the Indemnitor be one or more individuals, partnerships, associations or corporations.

25. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals and delivered in presence of:

CORPORATE AND ALL INDIVIDUAL SIGNATURES MUST BE ACKNOWLEDGED

| | | |
|---|---|---|
| (INDEMNITOR) X [signature] | (ADDRESS) 68-02 61st St<br>Middle Village NY<br>11379 | WITNESS: [signature] |
| John Vakalopoulos<br>(INDEMNITOR) | (ADDRESS) | WITNESS: |
| (INDEMNITOR) | (ADDRESS) | WITNESS: |
| (INDEMNITOR) | (ADDRESS) | WITNESS: |

(INDEMNITOR) (ADDRESS) WITNESS:

(INDEMNITOR) (ADDRESS) WITNESS:

(INDEMNITOR) (ADDRESS) WITNESS:

(INDEMNITOR) (ADDRESS) WITNESS:

(PARTNERSHIP)

By X: [signature] PARTNER

By PARTNER

(Affix Corporate Seal)

Eagle Management Enterrises, Inc.
(NAME OF CORPORATION)

Attest: X: [signature] SECRETARY

By [signature] PRESIDENT
John Vakalopoulos

(Affix Corporate Seal)

(NAME OF CORPORATION)

Attest: SECRETARY

By PRESIDENT

SIGNED, and sealed and delivered this ____ day of ____, 19____.

STATE OF ____
COUNTY OF ____ } ss.:

On this ____ day of ____, 19____, before me personally appeared ____ to me known, who, being by me duly sworn, did depose and say: that he resided in the ____ that he is the ____ of ____ the corporation described in and which executed the foregoing instrument that he knew the seal of said corporation; that the seal affixed to said instrument was such corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

Notary Public

STATE OF New York
COUNTY OF Queens } ss.:

On this 27th day of December, 19 2000 before me personally appeared John Vakalopoulos to me known, who, being by me duly sworn, did depose and say: that he resided in the state of New York that he is the President of Eagle Mgt. Enterprises the corporation described in and which executed the foregoing instrument that he knew the seal of said corporation; that the seal affixed to said instrument was such corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

[signature]
Notary Public

Constantine Pardalis
Notary Public State of New York
No. 01PA6102822
Qualified in Queens County
Commission Expires Jan. 21, 2004

STATE OF ____
COUNTY OF ____ } ss.:

On this ____ day of ____, 19____, before me personally came ____ to me known and known to me to be the partner described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed the same.

Notary Public