U.S. Department of Homeland Security

United States Coast Guard

Contracting Officer
United States Coast Guard
Civil Eng. Unit/Providence

311 Battery Road
Staten Island, NY 10305
Staff Symbol:
Phone: ( 718 ) 354-4017
FAX: ( 718 ) 354-4365

VIA FEDERAL EXPRESS
AIRBILL #839757097150

4330
02/17/04

Eagle Management Enterprises, Inc.
Attn: Mr. Panos Vikatos
21-33 72nd Street
East Elmhurst, NY 11370

RE: Contract DTCGG1-01-C-3WK143
Interior & Exterior Painting of USCG
Coney Island Light, Brooklyn, NY

# CONTRACTING OFFICER'S FINAL DECISION

Gentlemen:

The subject contract was awarded to your firm on 6 September 2001 in the amount of $138,000. The project included the removal of the existing lead paint from the exterior and interior surfaces, the repainting of the interior and exterior surfaces, the rehabilitation of the existing entrance door at the base of the light tower and the repair of the concrete pedestal around the perimeter of the base at USCG Coney Island Light, Brooklyn, NY. The contract required that you complete all work within one hundred forty (140) calendar days after receipt of the Notice to Proceed which was issued to you at the 5 February 2002 Pre-Construction Conference. The contract completion date was 25 June 2002.

## FINDING OF FACTS

1) You did not actually commence sandblasting the structure until September 2002. The reason for your delay in commencing work was your failure to submit a proper shrouding and scaffolding plan in accordance with the contract requirements. After commencing operations in September 2002 you proceeded in a sporadic manner sandblasting and painting the structure until January 2003. On 14 January 2003 you were advised in writing that the exterior painting was satisfactory and you would be permitted to take down the scaffolding. At that time the interior painting was not yet competed and there were other work items still outstanding.

2) On 20 June 2003 the undersigned along with the Coast Guard Construction Inspector, Mr. Tom Johnson visited the jobsite after receiving complaints from the lightkeeper that you were

not installing sod properly. At those times it was noticed that were numerous "blotches" all over the light tower. You were immediately apprised in writing of this condition and you were advised that the Coast Guard expected you to cure the defects. A subsequent meeting was held with the paint manufacturer at the site on 30 June 2003 and the results of that meeting along with your offer to initially repaint the entire lower one-third of the tower are summarized in my 2 July 2003 letter along with a request for a more detailed explanation of your proposed method of repair and associated progress schedule. In a faxed letter dated 17 July 2003 you advised that rather painting the entire structure, you intended to only paint over the "blotches". Attached to this letter was a proposed schedule showing completion by 7 August 2003. By letters dated 18 July and 22 July 2003 you were advised that your proposed method of repair had serious omissions and you were requested to submit a more complete methodology of repair along with a Progress Schedule. By letter dated Thursday, 31 July 2003 you advised that despite your opinion that the specification was defective, you would perform spot repainting of the structure. You did not provide a progress schedule and you further advised that prior to returning to work, you would like a meeting to discuss an outstanding change order. On the following Monday, 4 August 2003 you faxed in a letter advising that Mr. Vikatos would be on vacation until 25 August 2003.

3) On 20 October 2003 a fax was sent to your firm proposing a 30 October 2003 meeting in the Contracting Office. Mr. John Vakalopoulos telephonically advised the undersigned that representatives from your firm would attend. On that date no one from your firm attended nor did anyone from your firm communicate to the Coast Guard the reason for your failure to attend.

4) Because of your firm's failure to send representatives to the 30 October 2003 meeting, I was concerned that you had changed your mind and had no intention of correcting the defective painting. On 18 November 2003 I sent your firm via Federal Express a "Cure Notice" requesting that you confirm in writing your intention to perform the corrective work. I advised that your failure to provide an affirmative response would be construed as an admission that you did not intend to perform the corrective work. According to the Federal Express website, despite three attempts at delivery, the Cure Notice could not be delivered because the ***"Customer was not available or Business closed".*** The Federal Express envelope was subsequently returned to the undersigned.

5) Under cover of a 24 November 2003 certified letter addressed to your firm, a copy of the "Cure Notice" was again sent to your firm. The certified receipt showed delivery on 25 November 2003. Also on 25 November 2003 a copy of the "Cure Notice" was sent via certified mail to your attorney, Mr. Leonard J. Catanzaro. According to the certified receipt it was received on 1 December 2003. As of this date no response has been received to the 18 November 2003 "Cure Notice".

6) The two contract clauses which are pertinent and which address your responsibility to perform corrective work are the clauses entitled "Inspection of Construction' (FAR 52.246-12) and "Warranty of Construction" (FAR 52.246-21). These clauses are incorporated by reference on page 11 of the contract. The Inspection clause provides that in the event that a contractor does not correct rejected work, the Government may correct the work by contract or otherwise with the associated costs charged to the Contractor. Similarly, the Warranty clause provides that if a Contractor fails to correct any defect within the one year warranty period after being given a

reasonable time to do so, the Government has the right to repair the defective work at the Contractor's expense.

7) To date there have been four partial payments made against the subject contract in the net amount of $107,323.50 leaving a contract balance of $30,676.50.

## DETERMINATION

Because of your failure to submit a realistic Proposed Schedule of Progress along with a realistic method of proposed repair, your failure to attend a scheduled meeting to discuss the proposed repair and to discuss an outstanding change order and your failure to respond to the 18 November 2003 "Cure Notice", it is apparent that you have no intention of performing the corrective work. You have not offered an explanation for your failure to perform. I have determined that your failure to perform the corrective work is not excusable. It is therefore my Final Decision that the Government shall have the repairs performed by others with the resultant costs charged to your account and/or the account of your surety in accordance with the aforementioned "Inspection" and "Warranty" clauses. The Government shall utilize the remaining funds in the contract for the repair. In the event that these funds are not sufficient, you will be liable for any additional costs incurred in the completion of this project. The Government reserves all right and remedies provided by law or under the contract in addition to charging increased costs.

This is the Final Decision of the Contracting Officer. You may appeal this decision to the Department of Transportation Board of Contract Appeals, 400 Seventh Street, S.W., Washington, D.C. 20590. If you decide to appeal, you must, within (90) days from the date you receive the decision, mail or otherwise furnish written notice to the Board of Contract Appeals and provide a copy to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract number. Instead of appealing to the Board of Contract Appeals, you may bring an action directly to the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. Section 603 regarding Maritime Contracts) within 12 months of the date you receive this decision. If you appeal to the of Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claims procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less.

Sincerely,

JOHN O'BOYLE
CONTRACTING OFFICER

CC: Nova Casualty Co.