IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NOVA CASUALTY COMPANY, Plaintiff, | ) | |
| V. | ) | No. 04-1665C (Judge Lettow) |
| THE UNITED STATES, Defendant. | ) | |

PLAINTIFF'S REBUTTAL TO DEFENDANT'S MOTION TO DISMISS

NEIL B. CONNELLY, ESQ.
Attorney for Plaintiff
99 Church Street
White Plains, NY 10601
(914) 328-4100

electronically filed
June 17, 2005

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………………………... 4

PRELIMINARY STATEMENT…….…………………………………….. 5

ISSUES PRESENTED ……………….…………………………………… 6

1. Whether or not plaintiff, as surety, is equitably subrogated to the rights the prime contractor has against the Government where plaintiff has made payment to a subcontractor pursuant to the plaintiff's payment bond?

2. Does the plaintiff have the right to appeal to this Court from the contracting officer's February 14, 2005 Final Decision, in which a demand is made upon plaintiff, as surety, for monetary damages that the Government alleges are presently due and payable?

3. Does the plaintiff, as surety, have a claim against the Government for breach of the Government's duty as a stakeholder of the contract funds where the Government erroneously made payment to the contractor after the Government's discovery of the Lighthouse's blotchy appearance?

STATEMENT OF FACTS ………………………………………………… 7

ARGUMENT……………………………………………………………….. 12

THE DEFENDANT'S ARGUMENT FOR DISMISSAL OF THE PLAINTIFF'S COMPLAINT HAS BEEN OVERCOME BY THE AMENDED COMPLAINT, AND BY CIRCUMSTANCES THAT HAVE OCCURRED SINCE THE FILING OF THIS ACTION..…. 12

BASED UPON THE DOCTRINE OF EQUITABLE SUBROGATION AND THE CONTRACT DISPUTES ACT OF 1978, NOVA MAY PROCEED AGAINST THE GOVERNMENT IN THE UNITED STATES COURT OF FEDERAL CLAIMS……………………. 13

PLAINTIFF HAS THE RIGHT TO APPEAL THE CONTRACTING OFFICER'S FEBRUARY 14, 2005 FINAL DECISION, IN WHICH A DEMAND IS MADE UPON PLAINTIFF, AS SURETY, FOR MONETARY DAMAGES THAT THE GOVERNMENT ALLEGES ARE PRESENTLY DUE AND PAYABLE…………………….…. 16

THE GOVERNMENT BREACHED THE DUTY IT OWED TO THE SURETY AS STAKEHOLDER OF THE CONTRACT FUNDS BY RELEASING PAYMENT TO EAGLE MANAGEMENT AFTER THE GOVERNMENT HAD ACTUAL KNOWLEDGE THAT THE LIGHTHOUSE APPEARED BLOTCHY……………………… 20

CONCLUSION……………………………………..…………………. 24

# TABLE OF AUTHORITIES

## CASES

Page

Balboa Ins. Co. v. United States,
775 F. 2d 1158 (Fed. Cir. 1985) ..........14, 15

Fireman's Fund Ins. Co. v. United States,
909 F. 2d 495 (Fed. Cir. 1990) .......... 22, 23

Insurance Co. of the West v. United States,
55 Fed.Cl. 529 (2003) ..........12, 13, 14, 20

Preferred National Insurance Co. v. United States,
54 Fed.Cl. 600 (2002)..........14

National Surety Corporation v. United States,
118 F. 3d 1542 (Fed. Cir. 1997)..........22

Newark Ins. Co. v. United States,
144 Ct. Cl. 655 (1959)..........20

Reliance Ins. Co. v. United States,
27 Fed. Cl. 815 (1993).......... 22

Transamerica Premier Insurance Company v. United States,
32 Fed. Cl. 308 (1994).......... 4, 20, 21, 23, 24

United States Fidelity & Guaranty Co. v. United States,
475 F. 2d 1377 (Fed Cir. 1973)..........14

## STATUTES

41 U.S.C.A § 601 .......... 5, 13, 14

40 U.S.C. § 270a ..........7

28 U.S.C.A. § 1498 .......... 13, 14

## RULES

Rules of the United States Court of Federal Claims, Rule 15(a) .......... 11, 13

## TREATISES

Restatement of the Law, Third, Suretyship and Guaranty, §38 ..........12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------------------------------------------------------------X

NOVA CASUALTY COMPANY,

Plaintiff,

-against-

THE UNITED STATES,

Defendant.

-----------------------------------------------------------------------X

No. 04-1665C

**(JUDGE LETTOW)**

Electronically Filed
June 17, 2005

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in opposition to defendant United States of America's ("Government") Motion to Dismiss the amended complaint filed by Nova Casualty Company ("Nova") and as rebuttal to the United States' reply in support of its initial Motion to Dismiss. The United States' Motion should be denied for the following reasons:

a) this Court possesses exclusive subject matter jurisdiction over Nova's claim because it is a claim based upon equitable subrogation and for money damages against the United States founded upon an express or implied contract with the United States that is subject to 41 U.S.C.A. §601 et, seq., also referred to as the "Contracts Disputes Act";

b) the Contracts Disputes Act provides a forum in the United States Court of Federal Claims for Nova, who is equitably subrogated to Eagle Management Enterprises, Inc.'s ("Eagle Management")

interests, to appeal the Final Decision made by the Contracting Officer with respect to construction work performed at the Coney Island Lighthouse in Brooklyn, New York; and

c) the Government breached the duty it owed as stakeholder of the contract funds by releasing payment to Eagle Management after the Government had actual knowledge that, subsequent to the painting work performed by Eagle Management and its subcontractor, the Lighthouse appeared blotchy.

## ISSUES PRESENTED

1. Is the plaintiff, as surety, equitably subrogated to the rights the prime contractor has against the Government where the plaintiff has made payment to a subcontractor pursuant to the plaintiff's payment bond?

2. Does the plaintiff have the right to appeal to this Court from the contracting officer's February 14, 2005 Final Decision, in which a demand is made upon plaintiff, as surety, for monetary damages that the Government alleges are presently due and payable?

3. Does the plaintiff, as surety, have a claim against the Government when, subsequent to the completion of the contract and the Government's actual knowledge of the Lighthouse's blotchy appearance, the Government breaches its duty as a stakeholder of the contract funds by releasing payment to the prime contractor?

**STATEMENT OF FACTS**

The material facts, upon which Nova's opposition to defendant's motion to dismiss is based, are summarized as follows. In June 2002, Eagle Management entered into contract No. DTCGG1-01-C-3WK143 ("Prime Contract") with the United States Coast Guard ("Coast Guard") to perform certain construction work at the Coney Island Lighthouse in Brooklyn, New York, including the painting of the Lighthouse. As a condition of the Prime Contract, and in accordance with the Miller Act, 40 U.S.C. § 270a, Eagle Management requested, and Nova issued performance and payment bonds, in the respective penal sums of $138,000.00 for the benefit of the United States, as obligee. As partial consideration for Nova's execution of performance and payment bonds at its request, Eagle Management executed a General Agreement of Indemnity in favor of Nova, a copy of which has been filed with Plaintiff's Opposition to Defendant's Motion to Dismiss as Exhibit "A" (hereinafter the documents previously filed by the plaintiff with respect to this motion will be referred to by their filed Exhibit letters). Under the terms of the General Agreement of Indemnity, Eagle Management expressly assigned to Nova, and declared Nova to be subrogated to, all of Eagle Management's rights under any contract for which Nova issued its bonds, and on which Eagle Management failed to complete its contract obligations, or otherwise caused a claim to be asserted against Nova's bonds.

In furtherance of the work to be performed on the Prime Contract, Eagle Management contracted with Metron Environmental Limited ("Metron") and Patent Construction Systems Division ("Patent Harsco") to, inter alia, construct scaffolding and paint the Lighthouse. On January 14, 2003, the Coast Guard approved and accepted the

painting of the Coney Island Lighthouse as being in compliance with the terms of the Prime Contract. Exhibit “B” is a copy of the Contracting Officer’s January 14, 2003, letter.

However, on June 20, 2003, during a personal inspection, the Coast Guard’s contracting officer discovered that the Lighthouse appeared “blotchy”, and demanded that Eagle Management cure the defects. In an attempt to ascertain the Coast Guard’s basis for determining that the paint’s application was the cause of the Lighthouse’s blotchy appearance, numerous written and oral requests were made upon the Contracting Officer, Mr. John O’Boyle (“Mr. O’Boyle”), to provide evidence in support of the Coast Guard’s position. The Coast Guard has never provided any basis for the reversal of its January 14, 2003 finding that the painting of the Lighthouse complied with the requirements of the Prime Contract. On February 17, 2004, the Coast Guard issued a Contracting Officer’s Final Decision in which it declared that Eagle Management’s failure to re-paint the Lighthouse was not excusable, and that the Coast Guard would have the repairs performed by others, with the resultant costs charged to Eagle Management, or its surety (Nova). Exhibit “C” is a copy of the Contracting Officer’s Final Decision dated February 17, 2004.

On October 8, 2004, Mr. O’Boyle wrote to Nova, advising it that the Coast Guard had awarded a contract in the amount of $22,805.00 to Verrazano Contracting Co., Inc., for the re-painting of the Coney Island Lighthouse. The stated purpose of the contract was to correct, “the deficient work originally performed by Eagle Management”. The letter further stated that upon completion of the Verrazano contract, the Coast Guard would make a claim for the extra procurement costs against Eagle Management as well as

the Performance Bond surety, Nova. Exhibit "D" is a copy of Mr. O'Boyle's October 8, 2004 letter to Nova.

Based, in part, upon the Coast Guard's determination that the painting of the Lighthouse had been defectively performed, Eagle Management was unable to make payment to Metron and Patent Harsco. Thereafter, Metron and Patent Harsco brought separate suit in the United States District Court for the Eastern District of New York against Eagle Management and Nova, *United States of America ex rel Metron Environmental Limited v. Eagle Management Enterprises and Nova Casualty Company*, Civil Action No. CV-03-1952 and *United States of America ex rel Harsco Corporation, Patent Construction Systems Divisions v. Nova Casualty Company and Eagle Management Enterprises*, Civil Action No. CV-03-2959, respectively.

In a deposition conducted during discovery in the Metron litigation, Metron's president has testified, under oath, that Metron performed its work in accordance with the Prime Contract specifications, and that the work was inspected and accepted by the Coast Guard in January 2003. That case is presently scheduled for trial before Magistrate Judge Cheryl Pollak on July 11, 2005.

Nova filed a third-party complaint in the United States District Court for the Eastern District of New York against the United States for reimbursement and indemnification with respect to Metron's claims. However, the Department of Justice argued that the United States Court of Federal Claims has exclusive subject matter jurisdiction over claims against the United States arising out of the contract between the Coast Guard and Eagle Management. Nova's third-party action in the Federal District Court against the United States was therefore discontinued without prejudice on

November 5, 2004. Subsequently, Nova instituted the present action in the United States Court of Federal Claims on November 11, 2004.

After the filing of the complaint in this action, Mr. O'Boyle sent a letter dated November 26, 2004, to the Law Office of Neil B. Connelly, as attorney for Nova, in which he advised Nova, for the first time, that the Coast Guard had "erroneously made an additional payment to Eagle in the amount of $25,303.50 in July 2003…" That letter went on to state that the Coast Guard would be demanding payment from Eagle Management in the sum of $22,245.05, and that if Eagle Management did not comply with that demand, "the Coast Guard will look to the surety for satisfaction under the terms of Eagle's Performance Bond". Exhibit "E" is a copy of Mr. O'Boyle's November 26, 2004 letter.

On February 14, 2005, the Coast Guard issued another Contracting Officer's Final Decision in which the Coast Guard declared that Eagle Management had failed to perform corrective work on the Coney Island Lighthouse, and that Eagle Management and/or Nova are responsible for the additional costs, in the sum of $22,245.05, incurred in hiring a substitute contractor to repaint the Lighthouse. The February 14, 2005 Contracting Officer's Final Decision stated that, in lieu of an appeal to the Board of Contract Appeals, an action may be brought directly to the United States Court of Federal Claims. Exhibit "F" is a copy of the Contracting Officer's Final Decision dated February 14, 2005.

On March 4, 2005, Nova, through counsel, forwarded to the Contracting Officer, Mr. O'Boyle, written objections to his February 14, 2005, Final Decision. Exhibit "G" is a copy of the March 4, 2005 letter to Mr. O'Boyle from the Law Office of

Neil B. Connelly, Nova's attorney. On March 8, 2005, several weeks after the monetary demand on Nova contained in the Coast Guard's February 14, 2005 Final Decision, the United States brought a Motion to Dismiss Nova's original complaint arguing: a) that there is no jurisdiction in this Court because this Court cannot issue a declaratory judgment and there is no monetary claim due and owing; and b) Nova cannot bring a claim in this Court due to a lack of privity with the United States.

Simultaneously with the filing of its opposition papers, Nova filed an amended complaint in this proceeding. Exhibit "H" is a copy of the amended complaint. The filing of the amended complaint was as of course, pursuant to Rule 15(a) of the Rules of the United States Court of Federal Claims ("RCFC"), in that no responsive pleading to Nova's complaint had been served. The amended complaint alleges a cause of action for breach of contract by the Coast Guard due to its payment of $25,303.50 to Eagle Management after the Coast Guard's discovery of the blotches on the Lighthouse, notice of which payment was first provided to Nova on November 26, 2004, after the filing of the complaint. The amended complaint also appeals to this Court from the February 14, 2005 Contracting Officer's Final Decision, per the Final Decision's directive.

Subsequent to the filing of the amended complaint, Nova has settled Patent Harsco's claim. On May 5, 2005, in full settlement of Patent Harsco's claims against Nova, Nova forwarded check number D0088985 in the amount of $50,000.00 to Patent Harsco's counsel. Filed herewith as Exhibit "I" is a copy of Nova's check number D0088985, dated April 27, 2005, in the amount of $50,000.00 made payable to "Harsco Corporation".

The United States Court of Federal Claims has exclusive subject matter jurisdiction over this litigation because, a) it arises out of a contract subject to the Contract Dispute Act to which Nova, by virtue of its payment to Patent Harsco, has been subrogated to Eagle Management's rights against the Coast Guard; b) the Contracting Officer's Final Decision includes a claim asserted against Nova's performance bond for money damages alleged to be presently due and payable; and c) an appeal may be taken to this Court from the Contracting Officer's Final Decision. Nevertheless, the United States argues that neither the United States District Court for the Eastern District of New York, nor the United States Court of Federal Claims has jurisdiction over this matter, so that there is no forum in which Nova rights, remedies, claims, and defenses may be heard. For the reasons set forth herein, the United States' Motion to Dismiss Nova's amended complaint must be denied.

## ARGUMENT

### THE DEFENDANT'S ARGUMENTS FOR DISMISSAL OF THE PLAINTIFF'S COMPLAINT HAVE BEEN OVERCOME BY THE AMENDED COMPLAINT, AND BY CIRCUMSTANCES THAT HAVE OCCURRED SINCE THE FILING OF THIS ACTION.

The defendant's motion to dismiss is based on two distinct arguments. The first is that this Court does not have jurisdiction over Nova's demand for declaratory relief, and that it does not have jurisdiction over claims for money that are not presently due and payable. The second basis for the defendant's motion to dismiss is its assertion that Nova has failed to state a claim upon which relief can be granted because Nova is not in privity with the Coast Guard, and because Nova is not equitably subrogated to the rights of a prime contractor who does have privity.

The defendant's first argument is overcome by Nova's amended complaint, and by the Contracting Officer's February 14, 2005 Final Decision, with its monetary demand upon Nova for the sum of $22,245.05. The amended complaint, filed as of right under RCFC § 15(a), does not include a demand for a declaratory judgment. It does, however, demand the Coast Guard reimburse Nova for the amount of $25, 303.50, which the Coast Guard freely admits it erroneously paid to Eagle Management subsequent to the Coast Guard's discovery of the Lighthouse's blotchy appearance. Additionally, the amended complaint seeks a reversal on appeal to this Court of the Contracting Officer's February 14, 2005 Final Decision. Such a right of appeal, as discussed below, is provided to Nova under the doctrine of equitable subrogation, the Contract Disputes Act, and by virtue of the demand for payment made upon Nova by the Coast Guard.

**BASED UPON THE DOCTRINE OF EQUITABLE SUBROGATION AND THE CONTRACT DISPUTES ACT OF 1978, NOVA MAY PROCEED AGAINST THE GOVERNMENT IN THE UNITED STATES COURT OF FEDERAL CLAIMS.**

It is well settled that the Contract Disputes Act of 1978 provides a system of legal and administrative remedies for resolving Government contract claims. In that regard, The Tucker Act, 28 U.S.C.A. § 1498, establishes a waiver of the Government's sovereign immunity to allow contractors or "those that stand in their shoes" to commence suit against the Government in the United States Court of Federal Claims. *Insurance Co. of the West v. United States*, 24 F. 3d 1367, 1372 (Fed. Cir. 2001). While the Contract Disputes Act of 1978 has traditionally provided a forum for contractors and the Government to resolve disputes, contractor's sureties have also availed themselves of the

Disputes Act's remedies where they have been called upon to assume surety bond obligations. *Id*. at 1370.

A surety may bring itself within the ambit of the Tucker Act by "…establish[ing] a right of equitable subrogation to one of the parties to the bonded contract." *Preferred National Insurance Co., v. United States*, 54 Fed. Cl. 600, 603 (2002). The doctrine of equitable subrogation, which is firmly grounded upon basic principles of suretyship, "allows a party that has satisfied another's debt or undertaken another's obligation to step into the shoes of the original debtor or obligor." *Id*. at 604. Therefore, a surety that pays the unpaid claim of a subcontractor has rights against the Government as a subrogee of the principal contractor.

The federal courts have long held in favor of a surety's right to proceed against the Government under the Contracts Disputes Act of 1978 when the surety has paid the claims of unpaid subcontractors. In fact, the court in *Balboa Insurance Company v. United States*, 775 F. 2d 1158 (Fed Cir. 1985) reviews a history of decisions from the Supreme Court and Court of Federal Claims which clarifies the rights of a surety to sue the United States. Quoting the Court of Federal Claims opinion in *United States Fidelity & Guaranty Co. v. United States*, the *Balboa* court explains,

> [T]he surety was entitled to the benefit of all the rights of the laborers and materialmen whose claims it paid and those of the contractor whose debts it paid. The surety then is subrogated to the rights of the contractor who could sue the Government since it was in privity of contract with the United States. *Balboa* at 1161, citing *United States*

*Fidelity & Guaranty Co. v. United States*, 475 F.2d 1377, 201 Ct. Cl. 1 (1973).

Recent federal court cases have followed the subrogation theory espoused in *Balboa*. In *Insurance Company of the West*, on facts similar to the case at bar, plaintiff, as surety, issued both a performance and a payment bond to secure the obligation under its principal's contract with the Government. Upon its principal's failure to pay its subcontractors, plaintiff made payment to the defaulted contractors subcontractors. The *Insurance Company of the West* court agreed with the precedent set in *Balboa* and found that the plaintiff had stated a claim under the doctrine of equitable subrogation and had the right to bring its claim directly against the United States. Similarly, in *Transamerica Premier Insurance Company v. United States*, 32 Fed.Cl. 308 (1994), the surety was allowed to proceed against the Government in the Court of Federal Claims because it had established that it had paid its principal's unpaid subcontractors under the payment bond.

In the present case, this Court should deny defendant's motion to dismiss plaintiff's amended complaint. As set forth in plaintiff's amended complaint, plaintiff, as surety, issued a payment and performance bond on behalf of its principal, Eagle Management as a consequence of Eagle Management's Prime Contract with the Coast Guard. The Prime Contract required that Eagle Management perform certain construction work at the Coney Island Lighthouse in Brooklyn, New York, including the painting of the Lighthouse. In furtherance of the work to be performed, Eagle Management retained the services of subcontractors Patent Harsco and Metron. However, Eagle Management failed to pay either Patent Harsco or Metron upon completion of the painting at the Lighthouse. Consequently, both subcontractors filed

claims under the payment bond issued by Nova and later commenced suit against Eagle Management and Nova in federal district court. While, as discussed below, Nova believes that Metron's claims cannot be settled at this time, Nova has made payment to Patent Harsco in full settlement of its claims. Filed herewith as Exhibit "I" is a copy of Nova's check number D0088985, dated April 27, 2005, in the amount of $50,000.00 made payable to "Harsco Corporation". Based upon Nova's payment of Patent Harsco's claim, Nova has established a claim under the doctrine of equitable subrogation and has the right to bring, in this Court, its claims against the Government.

**PLAINTIFF HAS THE RIGHT TO APPEAL THE CONTRACTING OFFICER'S FEBRUARY 14, 2005 FINAL DECISION, IN WHICH A DEMAND IS MADE UPON PLAINTIFF, AS SURETY, FOR MONETARY DAMAGES THAT THE GOVERNMENT ALLEGES ARE PRESENTLY DUE AND PAYABLE.**

The February 14, 2005 Contracting Officer's Final Decision (Exhibit "F") was sent to Eagle Management and Nova, and included a demand for payment of $22,245.05, the excess costs allegedly incurred by the Coast Guard in hiring a substitute contractor to repaint the Lighthouse. Yet, the United States argues in its March 8, 2005 and May 13, 2005 motion papers that there is no claim for money presently due and owing. It is respectfully submitted that the documents before this court, and the allegations of the amended complaint, fully satisfy the condition of an existing claim for money. The Contracting Officer also included in the Final Decision a statement notifying the recipients of their right to appeal his Final Decision to the United States Court of Federal Claims. The amended complaint has exercised that right of appeal.

When the Coast Guard effectively terminated its contract with Eagle Management in February 2004, the Coast Guard demanded that Nova proceed with the repainting of the Lighthouse. Nova attempted to investigate the Coast Guard's claim, as it has a good faith duty to its principal to do, and asked the Contracting Officer for the information he used in determining that Eagle Management had failed to properly paint the Lighthouse. No such information was forthcoming. Eagle Management had notified Nova of the Coast Guard's January 2003 acceptance of the Lighthouse, and further notified Nova that the Lighthouse had been painted in accordance with the Prime Contract plans and specifications. In the absence of any evidence to support the Coast Guard's claim, Nova, in the exercise of good faith, denied the Coast Guard's Performance Bond claim.

In Mr. O'Boyle's November 26, 2004 letter to Nova's attorney (Exhibit "E"), the Coast Guard again declared its intent to demand payment from Nova under its performance bond. Mr. O'Boyle also stated, with respect to the blotchy condition of the paint job that, "The Coast Guard surmises that in the process of taking down the scaffolding, the subcontractor performed 'touch ups' with either contaminated paint or paint of a different color". Other than the Coast Guard's "surmise", no information to support the Coast Guard's finding of defective work by the painting subcontractor has been produced.

The Coast Guard's claim against Nova under the Performance Bond is valid if, and only if, Eagle Management failed to fulfill its obligations under the Prime Contract. The controlling language of the Performance Bond, a copy of the face page of which is filed herewith as Exhibit "J", provides that:

> "The above obligation is void if the Principal … (a)(1) Performs and fulfills all undertakings, covenants, terms, conditions, and agreements of the contract…"

The documents submitted herewith demonstrate that the painting of the Lighthouse was accepted by the Coast Guard in January 2003, and then rejected by the Coast Guard in June 2003, because of the appearance of "blotches" on the Lighthouse. There is no evidence provided with the Contracting Officer's February 17, 2004 and February 14, 2005 Final Decisions concerning the cause of the "blotches" on the Lighthouse, nor is there any indication that the Contracting Officer attempted to discover that cause. The Contracting Officer apparently assumed, or surmised, that the "blotches" resulted from a defect in performance by Eagle Management. Contradicting that assumption is the Coast Guard's earlier observance, inspection, and acceptance of Eagle Management's painting of the Lighthouse. In addition, the painting subcontractor, Metron, has testified, under oath, that it met with the paint manufacturer before commencing its work, and that it performed the painting of the Lighthouse in accordance with the Prime Contract specifications and the instructions of the paint manufacturer. In the presence of such uncontroverted facts, common sense would lead one to consider whether the Prime Contract specifications as to the paint itself were sufficient to achieve the desired results. Unfortunately, it appears that the Contracting Officer arbitrarily assumed that its January 2003 acceptance of the painting of the Lighthouse had been a mistake, and he demanded that the contractor remedy its faulty performance.

The burden of proving a claim under the terms of Nova's Performance Bond rests with the Coast Guard. It has been, and continues to be, Nova's position that the Coast Guard has failed to meet its burden, even on a prima facie basis. Moreover, despite

Nova's numerous requests for information, the Contracting Officer's Final Decision failed to include any documentary or other verifiable evidentiary to support the assumption that the exterior painting of the Coney Island Lighthouse had been defectively performed. For these reasons, Nova seeks relief in this Court to appeal the Contracting Officer's Final Decision because the Final Decision is wholly insufficient, without a rational basis, and is not supported by substantial evidence.

The United States Court of Federal Claims has exclusive subject matter jurisdiction over Nova's claims. First, the Government's Final Decision, in which the surety is named and served with a copy, refers to the right to appeal the Final Decision. Second, Nova's claims fall within the class of claims intended to be heard by the United States Court of Federal Claims, as they are founded upon an express or implied contract with the United States that is subject to the Contract Disputes Act of 1978. Nova's amended complaint alleges the existence of an express contract between Nova and the United States (the performance bond), a breach of the performance bond by the United States, and resulting damages to Nova. All of the elements necessary for this court to exercise jurisdiction in this matter are present, and the defendant's motion to dismiss must be denied.

The second argument set forth by the defendant's motions to dismiss is simply incorrect, both as to the facts and the law. With respect to the assertion of a lack of privity, the surety's rights in this matter do not derive from Eagle Management's subcontractors, but from Eagle Management under the doctrine of equitable subrogation, as previously set forth. The February 17, 2004 Contracting Officer's Final Decision, the February 14, 2005 Contracting Officer's Final Decision, and Nova's subsequent payment

to Patent Harsco, Eagle Management's unpaid subcontractor, have placed Nova "in the shoes" of the contractor, Eagle Management. In fact, in *Insurance Company of the West*, the Court of Federal Claims determined that once the surety satisfies the claims of materialmen, "… its subrogation rights relate[d] back to the date on which it issued the bonds." *Insurance Company of the West*, 55 Fed. Cl. 529, 541 (2003). Therefore, under the facts in this case, Nova has the right, under the doctrine of equitable subrogation, to appeal the Contracting Officer's Final Decision, which makes a demand for monetary damages upon Nova.

**THE GOVERNMENT BREACHED THE DUTY IT OWED TO THE SURETY AS STAKEHOLDER OF THE CONTRACT FUNDS BY RELEASING PAYMENT TO EAGLE MANAGEMENT AFTER THE GOVERNMENT HAD ACTUAL KNOWLEDGE THAT THE LIGHTHOUSE APPEARED BLOTCHY**

"Under suretyship law, contract funds, in the hands of the obligee, are viewed as security or 'collateral' to which the surety can turn to cover any losses that may be incurred should the contractor default on the underlying obligation and the surety be required to pay out under its bond." *Transamerica Premier Insurance Company v. United States*, 32 Fed.Cl. 308, 313 (1994). In that regard, suretyship law requires that the Government "… exercise reasonable care in the custody and preservation of collateral in its possession." *Transamerica* quoting, Restatement Third of Suretyship § 38 cmt. e (Tent.Draft No.2, April, 1993). The *Transamerica* court, went further by citing the proposition set forth in *Newark Ins. Co. v. United States*, 144 Ct. Cl. 655, 169 F. Supp. 955 (1959)

> if it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company,

> and of the plaintiff's assertion of such right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to judgment. *Transamerica*, 32 Fed.Cl. 308, 314.

In this case, plaintiff's amended complaint alleges a cause of action for breach of contract by the Coast Guard due to its payment of $25,303.50 to Eagle Management after the discovery of the blotches on the Lighthouse, notice of which was first provided to Nova on November 26, 2004, after the filing of the complaint. Mr. O'Boyle, the Contracting Officer, indicates in his letter that he "discovered that the Coast Guard Finance Center in Chesapeake, VA erroneously made an additional payment to Eagle in the amount of $25,303.50 in July 2003 without my authorization." Such payment was "erroneously made" one month after the Coast Guard's June 2003 discovery of the blotches on the Lighthouse. The fact that the payment was made without Mr. O'Boyle's authorization does not relieve the government of liability for its negligence.

Defendant argues in its motion to dismiss that plaintiff fails to state a claim upon which relief can be granted because it did not notify the Coast Guard of the Prime Contractor's default before the July 2003 payment was made. That argument is without a factual or legal basis. The Coast Guard had actual knowledge of the facts that gave rise to Eagle Management's alleged default under the contract due to the Coast Guard's discovery, during a June 2003 visit to the site, that the Lighthouse appeared blotchy. The cases cited by the defendant in support of the proposition that the surety had an obligation to notify the Government of its principal's imminent default all involve circumstances

where the surety had independent knowledge of the principal's financial difficulties, knowledge that the Government did not possess. *Fireman's Fund Ins. Co. v. United States*, 909 F.2d. 495 (Fed. Cir. 1990); *Reliance Ins. Co., v. United States*, 27 Fed. Cl. 815 (1993). The facts upon which those cases rely are simply not present here. Indeed, the opposite is the case, i.e., the Government had independent knowledge of the blotchy paint job that the surety did not possess, while Nova did not possess any information that Eagle Management was in default on a contract the Government had declared to be completed and accepted.

In *National Surety Corporation v. United States*, 118 F. 3d 1542 ( Fed Cir. 1997), the court held that the surety's failure to notify the Government did not affect the surety's right of subrogation and that the Government was liable to the surety for improper release of retainage to the contractor after the Government had knowledge of the contractor's default. There, despite contractual provisions precluding it from doing so the Government released retainage to the contractor after the Government determined that the contractor's progress was unsatisfactory. The contractor subsequently abandoned the project and was then defaulted by the Government. The surety, who completed the contractor's performance, made demand upon the Government for the improperly released retainage. In its decision, the *National Surety* court went further to state that "the surety bond embodies the principle that any material change in the bonded contract, that increases the surety's risk or obligation without the surety's consent, affects the surety relationship." *Id*. at 1544. Moreover, "the surety was entitled to rely on the Government's obligation to retain this percentage in accordance with the terms of the bonded contract, and on its right of subrogation to this security" because the "… surety's right was fixed upon

execution of the surety bonds, and was not dissolved or altered when the Government failed to implement the retainage required by the contract." *Id.* at 1545. The court admonished the Government's actions and agreed that the Government, with actual knowledge of the contractor's deficient performance, could not defeat the surety's right to demand the balance of the contract funds.

Under facts similar to the case at bar, in *Transamerica*, as a result of an "administrative error", final payment was made improperly to the contractor. As previously mentioned in this memorandum of law, the *Transamerica* court found that the Government owes a duty to the surety even before the Government has been informed by the surety of the contractor's actual default. In fact, the court addresses and refutes certain propositions, which the defendant relies upon in the instant motion to dismiss, found in *Fireman's Fund Ins. Co. v. United States*, 909 F.2d. 495 (Fed. Cir. 1990). The *Transamerica* court disagrees that *Fireman's Fund* stands for the rule of law that no duty is owed to the surety by the Government unless it is first informed by the surety of the contractor's actual default, but that *Fireman's Fund* was intended to address the specific set of facts before that court, "… rather than to proclaim a rule of universal application that would displace…" basic principles of suretyship law. *Transamerica* at 315.

Here, the facts are clear. The Coast Guard breached its duty to Nova to exercise reasonable care in the custody and preservation of the contract funds. The Coast Guard had actual knowledge of the Lighthouse's blotchy appearance. Despite this actual knowledge and due to an "administrative error", the Coast Guard "erroneously made" payment in the amount of $25,303.50 to Eagle Management. Upon discovery of alleged deficiencies in the painting work, the Coast Guard had a heightened duty to Nova, as

surety, to preserve the contract balance. *Id*. Nova has made payment to Patent Harsco in the amount of $50,000.00 and could potentially be liable to Metron Environmental for painting performed at the Lighthouse. However, the Coast Guard's failure to safeguard Nova's interests has unduly prejudiced Nova and reduced the contract balance, which Nova should have been able to utilize to offset its losses.

**CONCLUSION**

For the reasons set forth above, the defendant's motion to dismiss the plaintiff's amended complaint should be denied.

Respectfully submitted,

s/ Neil B. Connelly
Neil B. Connelly, Esq.
Attorney for Plaintiff
99 Church Street, 4th Floor
White Plains, New York 10601
914-328-4100
Fax 914-684-0401

Electronically filed: June 17, 2005