IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NOVA CASUALTY COMPANY, Plaintiff, | ) | |
| V. | ) | No. 04-1665C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, Defendant. | ) | |

PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NEIL B. CONNELLY, ESQ.
Attorney for Plaintiff
99 Church Street
White Plains, NY 10601
(914) 328-4100

electronically filed
October 14, 2005

TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES ………………………………………………. | ii |
| QUESTION PRESENTED ……………..…………………………………… | 2 |
| Under general principles of suretyship and the equitable doctrine of subrogation, is a surety who has made payments to subcontractors and suppliers in satisfaction of the surety's payment bond obligations subrogated to the rights of the contractor so that the surety may pursue a direct claim against the government in this court? | |
| SUPPLEMENTAL STATEMENT OF FACTS ……………………………… | 2 |
| ARGUMENT ………………………………………………...…………... | 3 |
| A SURETY WHO HAS PAID SUBCONTRACTORS AND SUPPLIERS IN FULFILLING THE SURETY'S PAYMENT BOND OBLIGATIONS IS SUBROGATED TO THE RIGHTS OF THE CONTRACTOR AND THE GOVERNMENT TO THE CONTRACT BALANCE. | |
| CONCLUSION ………………………………………...………………...….. | 6 |

TABLE OF AUTHORITIES

CASES

Page

Balboa Insurance Co. v. United States, 775 F.2d 1158 (1985) …………………….. 5

Gladsen v. Brown, Speer, Eq. 37 ………...……………………………………… 6

Henningsen v. United States Fidelity & Guarantee Company,
208 U.S. 404, 28 S.Ct. 389 (1908) …………………………………………….. 4

Insurance Co. of the West v. United States
243 F. 3d 1367 (Fed. Cir. 2001) ......................................................………...... 3

Insurance Company of the West vs. United States, 55 Fed.Cl. 529 (2003) …..… …. 3

Pearlman vs. Reliance Insurance Company, 371 U.S. 132 (1962) ………..……… 3

Prairie State National Bank of Chicago v. United States,
164 U.S. 227, 17 S.Ct. 142 (1896) ……………………………………………… 4

United States Fidelity & Guaranty Co. v. United States, 201 Ct.Cl. 1 (1973) ……… 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
-------------------------------------------------------------------------X
NOVA CASUALTY COMPANY, No.: 04-1665C
Plaintiff, (Judge Lettow)

-against-

THE UNITED STATES OF AMERICA,
Defendant
-------------------------------------------------------------------------X

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to this court's July 27, 2005 and September 22, 2005 Orders, Plaintiff Nova Casualty Company ("Nova"), submits this Supplemental Brief in opposition to the Defendant's Motion to Dismiss. In accordance with the directions of the court, this Supplemental Brief is limited to the issue of a surety's right to pursue a claim in this court against the government under the equitable doctrine of Subrogation, where the surety has made payment of the defaulting contractor's debts under the surety's payment bond. In opposing the defendant's Motion to dismiss, Nova relies upon its Amended Complaint, the briefs and documents submitted by both parties to this court, and the arguments set forth herein.

## QUESTION PRESENTED

Under general principles of suretyship and the equitable doctrine of subrogation, is a surety who has made payments to subcontractors and suppliers in satisfaction of the surety's payment bond obligations subrogated to the rights of the contractor so that the surety may pursue a direct claim against the government in this court?

## SUPPLEMENTAL STATEMENT OF FACTS

Nova relies upon the statement of facts submitted to the court in its opposition to defendant's Motion to Dismiss and in its reply brief. Since the filing of those papers and the oral arguments before this court on July 27, 2005, the sole remaining payment bond claim by Metron Environmental Ltd. ("Metron") has been settled. Annexed hereto as Supplemental Exhibit 1 are copies of the Stipulation of Settlement and the Stipulation Discontinuing Action entered into by the respective attorneys for Metron and Nova in the litigation in the United States District Court for the Eastern District of New York entitled, *United States of America ex rel Metron Environmental Ltd. v. Eagle Management Enterprises and Nova Casualty Company*, Civil Action # CV-03-1952.

The Court will note that the Stipulation of Settlement was signed only by counsel for Metron and Nova. A cross claim by Eagle Management Enterprises, Inc., ("Eagle Management"), against Metron for breach of contract is still pending in that court. However, the payment of $58,000.00 by Nova to Metron under the payment bond issued by Nova for Eagle Management's contract with the United States Coast Guard (Contract Number ETCGG1-01-C-3WK143, the "Prime Contract") fully satisfied Metron's claim against Nova's payment bond. That was the last claim pending against the payment bond issued by Nova for Eagle Management under the Prime Contract.

## ARGUMENT

### A SURETY WHO HAS PAID SUBCONTRACTORS AND SUPPLIERS IN FULFILLING THE SURETY'S PAYMENT BOND OBLIGATIONS IS SUBROGATED TO THE RIGHTS OF THE CONTRACTOR AND THE GOVERNMENT TO THE CONTRACT BALANCE.

According to the government, a surety paying the claims of subcontractors, laborers, and suppliers who provided services to a contractor on a government project obtains only the rights of those subcontractors, laborers, and suppliers. That argument ignores more than a century of legal precedent, including several Supreme Court decisions, holding that a surety who pays the debts of a contractor, pursuant to the surety's bond obligations, is equitably subrogated to the rights of, inter alia, the contractor in order to obtain payment from the government.

The government's position rests entirely upon dicta found in Insurance Company of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("West II"). There, the court made the following non-binding and legally imprecise statement: "It is well-established that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." West II, 243 F.3d 1367, 1371.

In the subsequently decided case of Insurance Company of the West vs. United States, 55 Fed.Cl. 529 (2003) ("West III"), the dicta by the Federal Circuit in West II was examined and disregarded. In the West III decision, the court looked to a long line of Supreme Court decisions and found that those decisions did not support the narrow scope of equitable subrogation described by the court in West II. Instead, the decision in West III followed the authority of the Supreme Court in Pearlman vs. Reliance Insurance Company, 371 U.S. 132 (1962), that, "framed the doctrine of equitable subrogation as allowing the surety to enforce the rights of a party whose debts the surety discharged. 371 U.S. at 136-37, 83 S.Ct. 232." West III, 55 Fed.Cl. 529, 537.

In the seminal case of Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142 (1896), the Supreme Court considered the scope of the equitable doctrine of subrogation in the context of United States government contracts. There, the court stated:

> "A great deal of confusion has arisen in the case by treating Hitchcock *(the surety)* as subrogated merely 'in the rights of Sundberg & Co.' *(the contractor)* in the fund, which, in effect, was saying that he was subrogated to no rights whatsoever. Hitchcock's right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) was capable of asserting against its debtor, Sundberg & Co., had the security not satisfied the obligation of the contractors; and one of such remedies was the right, based upon the original contract, to appropriate the 10 per cent. retained in its hands". Prairie State Bank, 164 U.S. 227, 232.

The surety in Prairie State Bank completed the performance of its defaulted principal's contract. Twelve years later, the Supreme Court in Henningsen v. United States Fidelity & Guarantee Company, 208 U.S. 404, 28 S.Ct. 389 (1908), addressed the circumstance where the surety was not called upon to complete the project, but was required by its bond to pay claims of the contractor's laborers and suppliers. There, the Supreme Court, quoting from the decision of the circuit court of appeals below, found that:

> "(the) surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation, …" (citing Prairie State Bank, supra). Henningsen, 208 U.S. 404, 411.

It is important to note that the decision in Henningsen resulted in payment to the surety of the contract balance remaining in the hands of the government after completion of the construction project. The rulings of the Supreme Court in Prairie State Bank and Henningsen on the doctrine of equitable subrogation thus grant a surety, who has fulfilled the obligations of its performance or payment bond, the rights of the contractor whose debts it has paid Moreover, the Supreme Court also defined subrogation as granting the performing or paying surety the remedies which the government had against the contractor. In Pearlman, the Supreme Court once again considered the scope of the doctrine of subrogation, and reaffirmed its earlier rulings in Prairie State Bank and Henningsen, stating:

> "Henningsen completed the buildings according to contract but failed to pay his laborers and materialmen. The surety paid. This Court applied the equitable principles declared in the Prairie Bank case so as to entitle the surety to the same equitable claim to the retained fund that the surety in the Prairie Bank case was held to have. Thus the same equitable principles at to subrogation and property interests in a retained fund were held to exist whether a surety completes a contract or whether, though not called upon to complete the contract, it pays the laborers and material men. These two cases therefore, together with other cases that have followed them, establish the surety's right to subrogation in such a fund whether its bond be for performance or payment." Pearlman, 371 U.S. 132, 139.

The dicta relied upon by the government in the instant litigation contradict the Supreme Court decisions in Prairie State Bank, Henningsen, and Pearlman. In his analysis of the circuit court's opinion in West II, Judge Miller, in West III, found as much, stating:

> "Read against the foregoing precedent, the dicta in West II do not define the scope of a surety's rights under the doctrine of equitable subrogation. When a surety, after financing or completing the performance of a defaulted contractor, discharges the outstanding claims of the subcontractors, it may subrogate to the rights of both the defaulted contractor and the subcontractors. Balboa [Balboa Insurance Co. v. United States], 775 F.2d [1158] at 1161 [1985]; USFG [United States Fidelity & Guaranty Co. v. United States], 201 Ct.Cl. [1] at 10, 475 F.2d [1377] at 1382 [1973]. Because the subcontractors have no standing to sue the Government directly, the surety must invoke the contractor's right to sue in order to sustain its claim against the Government. Id. If a surety were limited to exercising the rights of only the subcontractors under the doctrine of equitable subrogation, the surety never would be able to recover directly from the contracting agency. Such a result would contradict a century of jurisprudence on equitable subrogation." West III, 55 Ct.Cl. 529, 538.

## CONCLUSION

In its decision in Prairie State Bank, the Supreme Court looked back to the decision by Chancellor Johnson in Gladsen vs. Brown, Speer, Eq. 37, 41, where it was said that "the doctrine of subrogation is a pure, unmixed equity, having its foundation in its principles of natural justice… ". Prairie State Bank, 164 U.S. 227, 231. As a creature of equity founded upon principles of natural justice, subrogation may not be so strictly limited as to deny a surety the right to assert the claims of the contractor, whose debts it has paid, to the remaining contract funds. While it is undisputed that a surety who pays the claims of subcontractors and suppliers under the obligations of a payment bond obtains the rights of those subcontractors and suppliers, that is not the limit of the surety's rights. As the Supreme Court decisions make abundantly clear, the payment bond surety who fulfills its obligations (as Nova has in this matter) is subrogated to the rights of the contractor and the government to apply the contract funds to the cost of the construction project.

Respectfully submitted,

s/ Neil B. Connelly
Neil B. Connelly, Esq.
Attorney for Plaintiff
99 Church Street, 4th Floor
White Plains, New York 10601
914-328-4100
Fax 914-684-0401

Electronically filed: October 14, 2005.

CERTIFICATE OF FILING

I hereby certify that on the 14th day of October 2005, a copy of the "PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was electronically filed with the U.S. Court of Federal Claims. I understand that notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

s/ Neil B. Connelly