IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NOVA CASUALTY COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-1665C<br>(Judge Lettow) |

DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JAMES M. KINSELLA
Deputy Director

OF COUNSEL:

ISAAC JOHNSON, JR.
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593-0001

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-1011
Facsimile: (202) 307-0972

electronically filed
October 25, 2005

Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT . . . . . . . . . . . . . . . . 1

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Surety, Having Performed Only With Regard To The Payment Bond, Cannot Maintain An Action Against The United States In This Court To Recover The Amounts It Paid Pursuant To That Bond . . . . . . . . . . . . . . 5

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction . . . . . . . . . . . . . . . . . . . 5

B. The United States Has Not Waived Its Sovereign Immunity With Regard To Payment Bond Claims . . 7

C. Pearlman, Prairie State Bank, And Henningsen Do Not Provide A Basis For Nova's Claim After Blue Fox . . . . . . . . . . . . . . . . . . . . . . 15

D. The Trial Court's Decision In Insurance Company Of The West Is Neither Binding Nor Persuasive Authority . . . . . . . . . . . . . . . . . . . . 18

II. Nova Has No Other Basis For An Equitable Subrogation Claim And Therefore Cannot State A Claim For Recovery Of The July 2003 Progress Payment . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

Page

Cases

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . . . 7, 12, 20

Aetna Cas. & Sur. Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) . . . . . . . . . . . 6

Aetna Cas. & Sur. Co. v. United States,
845 F.2d 971 (Fed. Cir. 1988) . . . . . . . . . . . . 8, 12, 21

Am. Fid. Fire Ins. Co. v. United States,
206 Ct. Cl. 570, 513 F.2d 1375 (1975) . . . . . . . . . . . 8

Am. Ins. Co. v. United States,
62 Fed. Cl. 151 (2004) . . . . . . . . . . . . . . . . . 23

Argonaut Ins. Co. v. United States,
193 Ct. Cl. 483, 434 F.2d 1362 (1970) . . . . . . . . . . 14

Casa De Cambio Comdiv S.A., De C.V. v. United States,
291 F.3d 1356 (Fed. Cir. 2002) . . . . . . . . . . . . . 19

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . 6

Dep't of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . . . . . . . . . . 10, 17, 18

Dep't of Energy v. Ohio,
503 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . 6

Fid. Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . . . . . 6

Fireman's Fund Ins. Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) . . . . . . . . . . . 12, 21

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990) . . . . . . . . . . . . 14, 23

Page

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . 5

Hartford Fire Ins. Co. v. United States,
40 Fed. Cl. 520 (1998) . . . . . . . . . . . . . . 12, 14, 23

Henningsen v. United States Fid. & Guar. Co.,
208 U.S. 404 (1908) . . . . . . . . . . . . . . . . . 10, 15

Ins. Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . 5-7, 9-13, 17, 20

Ins. Co. of the West v. United States,
55 Fed. Cl. 529 (2003) . . . . . . . . . . . . . . . . . 18-20

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . 6

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . 6

Memphis L.R.R. Co. v. Dow,
120 U.S. 287 (1887) . . . . . . . . . . . . . . . . . . . . 9

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) . . . . . . . . . . . . . . . 10, 15, 16

Prairie State Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . 10, 15

Ransom v. United States,
17 Cl. Ct. 263 (1989) . . . . . . . . . . . . . . . . 15, 23

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . . . . 9

Reliance Ins. Co. v. United States,
27 Fed. Cl. 815 (1993) . . . . . . . . . . . . . . . . . . 23

Sec. Ins. Co. v. United States,
192 Ct. Cl. 754, 428 F.2d 838 (1970) . . . . . . . . . . . 12

Page

Terran v. Sec'y of Health & Human Servs.,
195 F.3d 1302 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . 5

Transamerica Ins. Co. v. United States,
989 F.2d 1188 (Fed. Cir. 1993) . . . . . . . . . . . . . . 9

United States Fid. & Guar. Co. v. United States,
201 Ct. Cl. 1, 475 F.2d 1377 (1973) . . . . . . 8, 16, 17, 21

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . 6

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . 9, 12-14

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . 6

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . 5, 6

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . 5

United States v. Williams,
514 U.S. 527 (1995) . . . . . . . . . . . . . . . . . . . . 6

West Coast Gen. Corp. v. Dalton,
39 F.3d 312 (Fed. Cir. 1994) . . . . . . . . . . . . . . 19

Westchester Fire Ins. Co. v. United States,
52 Fed. Cl. 567 (2002) . . . . . . . . . . . . . . . . . 23

Westech Corp. v. United States,
20 Cl. Ct. 745 (1990) . . . . . . . . . . . . . . . . . 21

Statutes

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . 6

40 U.S.C. § 3133(b) . . . . . . . . . . . . . . . . . . . . 2, 22

Page

41 U.S.C. § 609(a)(1) . . . . . . . . . . . . . . . . . . . . . . 4

Additional Authorities

Claims Court General Order No. 1 (Oct. 7, 1982), reprinted in 1 Cl. Ct. xxi . . . . . . . . . . . . . 19

Restatement (Third) of Suretyship & Guaranty . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NOVA CASUALTY COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | No. 04-1665C (Judge Lettow) |

DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to this Court's orders of July 27, 2005, and September 22, 2005, defendant, the United States, respectfully submits this supplemental brief in support of its motion to dismiss the amended complaint. At the hearing before this Court on July 27, 2005, upon our motion to dismiss, the Court asked both parties to address the status of the case in supplemental briefings after plaintiff resolved the remaining claim upon the payment bond at issue in this case, filed by the subcontractor Metron Environmental Limited ("Metron"). Plaintiff, Nova Casualty Company ("Nova"), informed the Court in its supplemental brief filed on October 14, 2005, that it had settled Metron's claim upon the payment bond for the amount of $58,000.00. As will be discussed below, the settlement of Metron's claim has no effect upon our motion to dismiss because a surety that only pays

all subcontractor and supplier claims pursuant to the payment bond does not state a claim based upon equitable subrogation against the United States.

## DEFENDANT'S SUPPLEMENTAL BRIEF

## QUESTION PRESENTED

Whether a surety who only makes payment to subcontractors and suppliers pursuant to its payment bond can state a claim against the United States upon the basis of equitable subrogation.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Nova provided performance and payment bonds with regard to Contract No. DTCGG1-01-c-3WK143 (the "prime contract"), a contract between the United States Coast Guard ("Coast Guard") and Eagle Management Enterprises ("Eagle Management"). Two subcontractors, Metron and Patent Harsco Corporation filed lawsuits pursuant to the Miller Act, 40 U.S.C. § 3133(b), against Nova and Eagle Management in the United States District Court for the Eastern District of New York. Nova now represents that it has settled both subcontractors' claims and that no claims

against the payment bond remain pending. Pl. Supp. Br. at 2.[1]

Nova filed the original complaint in this matter on November 14, 2004, seeking to recover from the United States any amount that it might be required to pay to Metron at the conclusion of the litigation in the Eastern District of New York. Compl. at pgs. 5-6.[2] We filed our first motion to dismiss on March 8, 2005, requesting that the complaint be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the United States Court of Federal Claims ("RCFC"). Nova filed an amended complaint on April 8, 2005, seeking to appeal the contracting officer's final decision, dated February 14, 2005, requesting payment from Eagle Management, or in the alternative, Nova, pursuant to the performance bond, in the amount $22,245.05. Am. Compl. at pg. 7.[3] Nova also sought to recover the $25,303.50 progress payment that the Coast Guard sent to Eagle Management in July 2003. Id. We filed a motion to dismiss the amended complaint on May 13, 2005, requesting that the amended complaint be dismissed pursuant

---

[1] "Pl. Supp. Br. __" refers to plaintiff's supplement brief in opposition to defendant's motion to dismiss, filed with the Court on October 14, 2005.

[2] "Compl.__" refers to plaintiff's complaint, filed with this Court on November 10, 2004.

[3] "Am. Compl. __" refers to plaintiff's amended complaint, filed with this Court on April 8, 2005.

to RCFC 12(b)(1) with regard to Nova's attempt to appeal the final decision of the contracting officer because only a contractor, who is in privity with the Government, can appeal a final decision of a contracting officer to this Court. Def. Mot. Am. Compl. at 8-11.[4] See also 41 U.S.C. § 609(a)(1). We also requested that Nova's amended complaint be dismissed pursuant to RCFC 12(b)(6) with regard to Nova's claim to the July 2003 payment made to Eagle Management. Def. Mot. Am. Compl. at 8-11, 16-19. A hearing was held on this motion to dismiss on July 27, 2005.

## II. Statement Of Facts

For the purposes of this motion only, we assume that the facts stated in the amended complaint and Nova's supplemental brief are true. In addition, we note that to this date, Nova has never made a payment pursuant to its performance bond on the prime contract or entered into a takeover agreement with the Coast Guard.

[4] "Def. Mot. Am. Compl. __" refers to defendant's motion to dismiss the amended complaint and reply in support of motion to dismiss, filed with the Court on May 13, 2005.

ARGUMENT

I. The Surety, Having Performed Only With Regard To The Payment Bond, Cannot Maintain An Action Against The United States In This Court To Recover The Amounts It Paid Pursuant To That Bond

A. The Court Of Federal Claims Is A Court Of Limited Jurisdiction

Like its predecessors, the Court of Federal Claims is a court of limited jurisdiction. Terran v. Sec'y of Health & Human Servs., 195 F.3d 1302, 1309 (Fed. Cir. 2000). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief.[5] United States v. Testan, 424 U.S. 392, 399 (1976); Ins. Co. of the West

[5] In United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003), the Supreme Court opined that when the Tucker Act waives sovereign immunity for suits of the type generally encompassed by a claim, jurisdiction exists for purposes of surviving a motion to dismiss for lack of jurisdiction. The Federal Circuit recently reiterated that while jurisdiction is determined at the outset of litigation, disposition under 12(b)(6) is proper where the facts alleged do not come within the money-mandating statute upon which jurisdiction is premised. Fisher v. United States, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005), superceding, 364 F.3d 1372 (Fed. Cir. 2004). Based upon this guidance, the United States maintains that Nova's claim fails to state a claim upon which relief can be granted. This conclusion follows from the fact that Nova's amended complaint, on its face, states a type of claim over which this Court has jurisdiction, which appears to meet the criterion established in White Mountain. Having said that, the Government maintains that jurisdiction is lacking over this particular claim, because the Tucker Act does not waive immunity for claims by sureties under the facts presented here. Therefore, the issue of jurisdiction is inextricably linked to the failure to state a claim, for which reason, it is discussed at the outset of this brief.

v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fid. Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; King, 395 U.S. at 1; Ins. Co. of the West, 243 F.3d at 1372; accord Dep't of Energy v. Ohio, 503 U.S. 607, 614-16 (1992). When confronted with a jurisdictional issue, the Court's "task is to discern the 'unequivocally expressed' intent of Congress, construing ambiguities in favor of immunity." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); see generally United States v. Williams, 514 U.S. 527, 531 (1995). Plaintiff bears the burden of proving its jurisdictional allegations. E.g., McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Cas. & Sur. Co. v. United States, 228 Ct. Cl. 146, 151, 655

F.2d 1047, 1051 (1981). It is well-established that the Tucker Act contains a waiver of the Government's sovereign immunity to be sued by its contractors or by those who "stand in the shoes" of its contractors. Ins. Co. of the West, 243 F.3d at 1375. The question presented here is the extent to which that waiver extends, and whether it reaches Nova's claims.

B. The United States Has Not Waived Its Sovereign Immunity With Regard To Payment Bond Claims[6]

The prime contract required Eagle Management to secure performance and payment bonds. Supp. Mat. at pgs. 20-21.[7] Pursuant to the performance bond, the surety guarantees that it will complete, or finance completion of, the contract if the contractor defaults or is otherwise unable to complete performance.[8] E.g., Ins. Co. of the West, 243 F. at 1370.

[6] The Government has advanced this same basic argument in several other cases pending before the Court. Those cases are: Mountbatten Surety Co. v. United States, No. 02-1228C (Fed. Cl.); Gulf Insurance Co. v. United States, No. 03-626C (Fed. Cl.); Commercial Casualty Insurance Co. v. United States, No. 03-2033 (Fed. Cl.); National American Insurance Co. v. United States, No. 04-1390C (Fed. Cl.); and Capitol Indemnity Corp. v. United States, No. 04-1478C (Fed. Cl.). In Liberty Mutual Insurance Co. v. United States, No. 04-254C (Fed. Cl.), the Government advanced the same basic argument but moved to dismiss pursuant to RCFC 12(b)(1) or, in the alternative, RCFC 12(b)(6).

[7] "Supp. Mat. __" refers to the supplemental materials filed by the parties on August 15, 2005.

[8] When the surety opts to complete the project, it sometimes enters into a contract directly with the Government, which is known as a "takeover agreement." See Admiralty Constr., Inc. v.

Pursuant to the payment bond, the surety promises to pay subcontractors, suppliers, and materialmen (hereinafter "subcontractors") if the prime contractor fails to pay them. E.g., Aetna Cas. & Sur. Co., 845 F.2d at 973. Thus, the performance bond protects the Government's interest in obtaining a completed project, whereas the payment bond protects the subcontractors' interests. E.g., id. at 973-74.

Nova provided both performance and payment bonds with regard to the contract. Am. Compl. ¶ 9. Nova did not complete the project, however, or finance its completion, after Eagle Management failed to correct the defective exterior painting. See Am. Compl. ¶¶ 14, 16, 19, 23. In its supplemental brief, Nova alleges that it has now settled all the claims upon the payment bond from subcontractors that were not paid by Eagle Management for work the subcontractors performed on the project.[9]

---

Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998); Aetna Cas. & Sur. Co. v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988).

[9] This allegation is important because prior cases held that a surety cannot pursue a payment bond-based equitable subrogation claim until it has paid, in full, all of the subcontractors' claims for payment. See, e.g., United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 8, 475 F.2d 1377 (1973) ("[u]ntil this surety undertakes to pay all of the outstanding claims owed by [the prime contractor], it will not be permitted to share in retainages still held by the Government"); accord Am. Fid. Fire Ins. Co. v. United States, 206 Ct. Cl. 570, 575-76, 513 F.2d 1375 (1975); Restatement (Third) of Suretyship & Guaranty § 28 cmt. c (the surety "is not entitled to subrogation unless the underlying obligation is totally satisfied").

Pl. Supp. Br. at 2. In this suit, Nova contends that by payment of all the subcontractors pursuant to the payment bond, it is subrogated to the rights of the contractor, and can now state a claim against the Government for the remaining contract balance. Id. at 3.

To "maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract." Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990). As a result, the subcontractor on a Government contract cannot sue the Government. E.g., United States v. Munsey Trust Co., 332 U.S. 234, 241, 244 (1947); Ins. Co. of the West, 243 F.3d at 1371. Although there is no privity of contract between the Government and its sureties, sureties have generally been allowed to bring suit at the Court of Federal Claims and its predecessors pursuant to the doctrine of equitable subrogation.[10] Ins. Co. of the West, 243 F.3d at 1370 (citing cases).

It was not until Insurance Company of the West v. United

[10] "'[T]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties.'" Transamerica Ins. Co. v. United States, 989 F.2d 1188, 1192 (Fed. Cir. 1993) (quoting Memphis L.R.R. Co. v. Dow, 120 U.S. 287, 301-02 (1887)).

States, 243 F.3d 1367 (Fed. Cir. 2001), however, that the court of appeals critically evaluated anew the scope of the waiver of sovereign immunity with regard to equitable subrogation. In that decision, the Court acknowledged that it had previously relied upon three Supreme Court decisions, Pearlman v. Reliance Insurance Co., 371 U.S. 132 (1962), Henningsen v. United States Fiduciary & Guaranty Co., 208 U.S. 404 (1908), and Prairie State Bank v. United States, 164 U.S. 227 (1896), to support the notion that the Court of Federal Claims possesses jurisdiction to entertain a claim of equitable subrogation. The court of appeals concluded, however, that these three cases no longer supported a waiver of sovereign immunity for subrogation claims, in light of the Supreme Court's decision in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999). Ins. Co. of the West, 243 F.3d at 1371-72. This conclusion followed from the Supreme Court's statement:

> None of these cases [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the Government. Instead, these cases dealt with disputes between private parties over priority to funds which had been transferred out of the Treasury and as to which the Government had disclaimed any ownership.

Blue Fox, 525 U.S. at 265. In view of the private nature of the

litigants, the question whether sovereign immunity had been waived for such claims did not need to be – and was not – addressed by the Supreme Court.[11]

In Insurance Company of the West, the court of appeals defined the waiver of sovereign immunity found in the Tucker Act with regard to a claim by a surety. The scope of that waiver was based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375. The court also stated that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374. As the court explained:

> [W]e think that Aetna [Casualty & Surety Co. v. United States, 338 U.S. 366 (1949)] reflects a broader and more generally applicable legal principle: waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law . . . .

---

[11] Based upon the opinion in Insurance Company of the West, there may be some question as to whether the funds at stake in Prairie State Bank had in fact been "transferred out of the Treasury." Ins. Co. of the West, 243 F.3d at 1372 n.2. This possible factual issue, however, did not affect the Federal Circuit's conclusion that "the Supreme Court did not directly address the sovereign immunity issue in Prairie State Bank." Id.

Id. at 1373. Consequently, a surety that only discharges the prime contractor's obligation to pay its subcontractors "is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government." Id. at 1371 (citing Munsey Trust Co., 332 U.S. at 240-41); accord Admiralty Constr., Inc., 156 F.3d at 1221-22; Hartford Fire Ins. Co. v. United States, 40 Fed. Cl. 520, 522-23 (1998), aff'd, 185 F.3d 885 (Fed. Cir. 1999) (table).

Given the requirement that the surety "step into the shoes of a government contractor," Insurance Company of the West, 243 F.3d at 1375, the Tucker Act's waiver of sovereign immunity does not extend beyond the claims of a performing surety. These sureties convey a benefit upon the Government by discharging an obligation the prime contractor owed the Government and, thereby, obtain the right to bring suit against the Government.[12] E.g., Aetna Cas. & Sur. Co., 845 F.2d at 973-74; Sec. Ins. Co. v. United States, 192 Ct. Cl. 754, 760-61, 428 F.2d 838 (1970)

---

[12] The right of a surety that enters into a takeover agreement to bring suit against the United States at the Court of Federal Claims with regard to claims that arose after the execution of the takeover agreement is even more clear, because the takeover agreement constitutes a contract between the United States and the surety, which satisfies the requirement for privity of contract. See Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1351-52 (Fed. Cir. 2002).

(interpreting Munsey Trust).

In this case, Nova allegedly paid all the subcontractors pursuant to the payment bond, but did not complete the contract or finance its completion. See Am. Compl. ¶¶ 14, 16, 19, 23; Pl. Supp. Br. at 2. As such, Nova's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated only to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the government.

Ins. Co. of the West, 243 F.3d at 1371 (emphasis added). This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 234 (1947), upon which the court of appeals relied. In Munsey Trust, the Supreme Court concluded:

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. In other words, "[the surety] cannot acquire

by subrogation what [the subcontractor,] whose rights he claims [,] did not have." Id. at 242.

Permitting recourse by the surety against the Government, where the surety neither completes the contract nor finances its completion, converts the Government into an insurer for the surety against losses precipitated by the contractor with whom the surety entered into a contract. This is inappropriate because "[i]t is the surety who is required to take risk. We have no warrant to increase risks of the government." Munsey Trust Co., 332 U.S. at 244; accord, e.g., Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990); Hartford Fire Ins. Co., 40 Fed. Cl. at 523. Accordingly, the question of the surety's loss under the payment bond should be resolved between the surety and the prime contractor that it bonded, and that caused the loss. This is fair and appropriate.[13] Indeed, the surety agreed, for a price, to accept the risk inherent in insuring the performance and payment by a contractor, and occupied a better position than the Government in deciding to

[13] In Argonaut Insurance Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), the Court of Claims reiterated the "well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Id. at 493, 434 F.2d at 1367 (citing cases).

whom it would issue bonds. Cf., Ransom v. United States, 17 Cl. Ct. 263, 269 (1989) (information related solely to an individual contractor's ability to perform is better known by surety than Government), aff'd, 900 F.2d 242 (Fed. Cir. 1990).

Nova, the surety in this case, did not take over the contract performance of its bonded contractor; nor did it effectively complete the contract performance by paying for completion of contract performance under a performance bond. See Am. Compl. ¶¶ 14, 16, 19, 23. As such, Nova is not in privity with the Government and fails to meet the criteria for bringing an equitable subrogation claim. Given this fact and the fact that Nova was never a "contractor" for the Government, the inescapable conclusion is that the United States has not waived its sovereign immunity with regard to Nova's claim.

C. Pearlman, Prairie State Bank, And Henningsen Do Not Provide A Basis For Nova's Claim After Blue Fox

In its supplemental brief, Nova points to Pearlman v. Reliance Insurance Co., 371 U.S. 132 (1962), Prairie State Bank v. United States, 164 U.S. 227 (1896), and Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404 (1908), as a basis for its claim that, as a payment bond surety, it can assert an equitable subrogation claim against the United States. Pl. Supp. Br. at 4-5.

The issue in Pearlman was whether the surety could assert rights to Government-retained contract funds after payment to the subcontractors and completion of contract performance. The Supreme Court stated the general proposition that "there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." 371 U.S. at 136-37.

In an en banc decision in United States Fidelity & Guaranty Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973), the Court of Claims concluded that there appeared to be tension between the Supreme Court's decisions in Munsey Trust and Pearlman. The court perceived conflict because Munsey Trust provided that subcontractors and suppliers had no enforceable rights against the Government. 475 F.2d at 1381. At the same time, the court read Pearlman as holding that the surety was entitled to the benefit of all the rights of the laborers and materialmen whose claims it paid and those of the contractor whose debt it paid. 475 F.2d at 1382. In attempting to reconcile these decisions, the Court of Claims concluded that the surety, which pays subcontractors, obtains its substantive claim from the subcontractors it paid and its jurisdictional right to sue from the bonded contractor, which was in privity with the

Government. Id.

The precedent upon which Nova relies are premised on the continued viability of Pearlman as a waiver of sovereign immunity for the payment bond claims of sureties. If this premise fails, then the decisions employing it as the cornerstone of their analysis fail as well.

To the extent that Claims Court and Court of Federal Claims decisions employing this Pearlman analysis have any precedential value, they are of limited value. This result arises from the fact that, despite reliance upon these cases for the proposition that jurisdiction exists in this Court for equitable subrogation claims by sureties, that reliance is clearly misplaced. Nothing is more clear than the Supreme Court's language that "[n]one of these cases... [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity." Blue Fox, 525 U.S. at 265.

In other words, these three cases and their progeny no longer provide the basis for finding a waiver of sovereign immunity, which is necessary to sustain an action in this Court. Ins. Co. of the West, 243 F.3d at 1372. Instead, the Court's analysis must once again focus upon the requirement that the claimant be either a contractor or one who stands in the shoes of

a contractor by performing the contract. Moreover, the apparent conflict that the Court of Claims perceived in United States Fidelity & Guaranty Co., in hindsight, was nonexistent, because while Munsey Trust clearly dealt with the question of sovereign immunity, the Supreme Court has declared that Pearlman did not. Blue Fox, 525 U.S. at 265.

If a surety takes over the contract or completes performance of the contract pursuant to its performance bond, so that it assumes the duties of the contractor and provides a benefit to the Government upon behalf of the bonded contractor, then, arguably, jurisdiction exists in this Court over the surety's claims. Absent such a benefit flowing from the surety to the Government, which invests the contractor, and through it the surety, with a right against the Government, equitable subrogation jurisdiction for a surety's claims does not exist. For this reason, Pearlman, Prairie State Bank, and Henningsen do not provide Nova with a basis for its equitable subrogation claim.

D. The Trial Court's Decision In Insurance Company Of The West Is Neither Binding Nor Persuasive Authority

The Court of Federal Claims' opinion in Insurance Company of the West on remand does not assist Nova. In its supplemental brief, Nova relies upon Insurance Company of the West v. United

States, 55 Fed. Cl. 529 (2003) ("ICW III"), to support its argument that a payment bond surety can assert a claim against the United States under the doctrine of equitable subrogation. Pl. Supp. Br. at 3, 5. However, this decision does not aid Nova's argument.

Unlike the decisions of the former Court of Claims, which are binding precedent upon this Court, Claims Court General Order No. 1 (Oct. 7, 1982), reprinted in 1 Cl. Ct. xxi, the decisions of the Court of Federal Claims are not binding upon the Court. See Casa De Cambio Comdiv S.A., De C.V. v. United States, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) (noting that prior decisions of the Court of Federal Claims do not bind the Court of Federal Claims). Accord, West Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court").

However, the decision in ICW III is unhelpful to Nova for another reason. The surety in ICW III financed completion of the contract. 55 Fed. Cl. at 540. The claim pursued by the surety in ICW III was for losses it sustained under its performance bond. 55 Fed. Cl. at 532 n.5. Indeed, the principle that the Court of Federal Claims noted on remand was that if "a surety,

after financing or completing the performance of a defaulted contractor, discharges the outstanding claims of the subcontractors, it may subrogate to the rights of both of the defaulted contractor and the subcontractors." 55 Fed. Cl. at 538 (emphasis added). Thus, unlike Nova, the surety in ICW III was subrogated to the claims of its bonded contractor because it had either taken over contract performance or had financed completion of the defaulted contract and was thus in privity with the United States. Ins. Co. of the West, 243 F.3d at 1370.

To the extent that ICW III is persuasive, it appears that, considering the facts of that case, the result supports the Government's position, rather than Nova's. This follows from the court of appeals' view that "to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the competion of the defaulted contract under its performance bond." Admiralty Constr., 156 F.3d at 1222. Nevertheless, while the result in ICW III may support the Government's position in this matter, we respectfully disagree with the analysis employed by the Court and believe that Nova's reliance upon the ICW III analysis is misplaced.

The theory that a surety should be treated differently depending upon the type of bond under which payment is made is

neither novel nor unique. See Aetna Cas. & Sur. Co., 845 F.2d at 975 (distinguishing a surety's right to recover funds depending upon the type of bond under which payment was made); Westech Corp. v. United States, 20 Cl. Ct. 745, 750 (1990). This analysis is consistent with the Federal Circuit's decisions in such cases. In Fireman's Fund Insurance Company v. England, 313 F.3d 1344 (Fed. Cir. 2002), the court easily concluded that jurisdiction existed over a claim by a surety that took over contract performance or financed completion of the contract. 313 F.3d at 1351.

Since Munsey Trust, the courts have made clear that subcontractors, and those who stand in the shoes of subcontractors, are not in privity with the United States. After the Supreme Court's clarification in Blue Fox, it is clear that sovereign immunity has not been waived for the claims of a surety whose claims are derived solely from a subcontractor or supplier. To the extent that the Government owes the subcontractors an equitable obligation, the Government is released from the obligation when the payment bond surety pays the subcontractors. United States Fid. & Guar. Co., 201 Ct. Cl. 1, 475 F.2d at 1381. While subcontractors have equities in relation to the prime contractor, these are not equities that can be enforced against

the Government, absent an explicit waiver of sovereign immunity by Congress. The surety is, of course, always permitted to enforce the subcontractor's equities against the party for whom it paid: the contractor. See 40 U.S.C. § 3133(b).

## II. Nova Has No Other Basis For An Equitable Subrogation Claim And Therefore Cannot State A Claim For Recovery Of The July 2003 Progress Payment

Because Nova did not finance completion of the contract under its performance bond, nor did it enter into a takeover agreement with the Coast Guard, Nova has no other basis for an equitable subrogation claim. Therefore, this Court need not address Nova's argument that it is entitled to the July 2003 progress payment from the Coast Guard to the prime contractor, Eagle Management.

However, in the event that this Court finds that Nova can state a claim for equitable subrogation after only satisfying the claims on the payment bond, then we rely upon the arguments made in our motion to dismiss the amended complaint, and at the hearing before this Court on July 27, 2005, that a surety who states a claim for equitable subrogation can only recover funds that the Government paid to the prime contractor after the surety notified the Government that it should withhold further payment to the prime contractor. Def. Mot. Am. Compl. at 16-19. See

also Fireman's Fund Ins. Co., 909 F.2d at 498-99 (citing cases); Am. Ins. Co. v. United States, 62 Fed. Cl. 151, 155-57 & nn. 5-7 (2004); Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567, 576-79 (2002); Hartford Fire Ins. Co., 40 Fed. Cl. at 523-24; Reliance Ins. Co. v. United States, 27 Fed. Cl. 815, 826-27 (1993); Ransom, 17 Cl. Ct. at 272-74. This is so, because "[t]he government . . . owes the surety no equitable duty to exercise reasonable discretion in administering contract funds unless and until the surety notifies the government that the contractor has defaulted or is in danger of defaulting under the bond." Hartford Fire Ins. Co., 40 Fed. Cl. at 522-23 (citing cases). As this Court noted in Westchester Fire Insurance Company, "[i]t is not the Government's responsibility, as the Federal Circuit made clear in Fireman's Fund, to divine the surety's thinking process, or to act as a nanny for the surety and ask it whether, under the circumstances of a given contract, it would like the Government to withhold progress payments to the contractor." 52 Fed. Cl. at 579.

Nova does not allege that it provided notice to the Government prior to July 2003 that Eagle Management was in danger of defaulting or requested that the Coast Guard withhold progress payments to Eagle Management. Accordingly, even if this Court

finds that Nova's payment to the subcontractors pursuant to the payment bond is sufficient to establish a claim for equitable subrogation, Nova's allegations are not sufficient to state a claim for recovery of the July 2003 progress payment made to the prime contractor.

CONCLUSION

For these reasons and the reasons set forth in our motion to dismiss the amended complaint, and at the hearing before this Court on July 27, 2005, we respectfully request the Court to dismiss Nova's amended complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/James M. Kinsella
JAMES M. KINSELLA
Deputy Director

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L St., N.W.
Washington, DC 20530
Telephone: (202) 307-1011

OF COUNSEL:

ISAAC JOHNSON, JR.
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, DC 20593-0001

October 25, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2005, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad