IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NOVA CASUALTY COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | No. 04-1665C (Judge Lettow) |

JOINT STIPULATION OF FACTS

The parties hereby stipulate to the following facts in this matter:

1. On September 6, 2001, the United States Coast Guard ("Coast Guard") and Eagle Management Enterprises, Inc. ("Eagle Management") entered into contract no. DTCGG1-01-C-3WK143 ("the contract") to remove lead paint from, and to prepare and paint all exterior and interior surfaces of, the Coney Island Light Tower (the "light tower"), in Brooklyn, New York.

2. The total contract award amount was $138,000.

3. As a condition of the contract, and pursuant to the Miller Act, 40 U.S.C. § 3131(b), Eagle Management obtained performance and payment bonds from Nova Casualty Company ("Nova") in the amount of $138,000 each.

4. FAR § 52.235-5 was incorporated into the contract, and provided that Coast Guard would pay Eagle Management with progress payments.

5. In order to receive the progress payment, FAR § 52.232-5 required Eagle Management's invoices to make certain

certifications, outlined in FAR § 52.232-5(c).

6. The contract also required the Coast Guard to pay progress payments within 30 days of receiving an invoice.

7. In 2002, Eagle Management entered into subcontracts with Metron Environmental Limited ("Metron") and Harsco Corporation ("Harsco") to perform work on the contract.

8. The Coast Guard contracting officer issued his first Cure Notice to Eagle Management on April 15, 2002 because it had failed to commence work at the site according to its progress schedule, and failed to submit a scaffolding and shrouding plan.

9. On June 12, 2002, Eagle Management submitted its first partial payment invoice, requesting payment in the amount of $49,570. On this invoice, it certified that "[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code."

10. In response to the June 12, 2002 invoice, the Coast Guard approved payment in the amount of $32,070, leaving a contract balance of $105,930. A portion of the requested amount was retained because of overbilling and incomplete work.

11. On September 16, 2002, Eagle Management submitted its second partial payment invoice, requesting payment in the amount of $32,800. On this invoice, it again certified that "[p]ayments to

subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code."

12. In response to the September 16, 2002 invoice, the Coast Guard approved payment in the amount of $28,500, leaving a contract balance of $77,430. A portion of the requested amount was retained because of overbilling and incomplete work.

13. On November 1, 2002, Eagle Management submitted its third partial payment invoice, requesting payment in the amount of $39,850. On this invoice, it again certified that "[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code."

14. In response to the November 1, 2002 invoice, the Coast Guard approved payment in the amount of $37,450, leaving a contract balance of $39,980. A portion of the requested amount was retained because of overbilling and incomplete work.

15. On November 22, 2002, the Coast Guard, Eagle Management, and Nova received notice from Harsco that Eagle Management owed them $63,349.83 for work completed on the light tower as of May 30, 2002.

16. On December 5, 2002, the Coast Guard contracting officer issued a second cure notice to Eagle Management for failing to complete the contract by the required deadline and damage to the site. The contracting officer also noted that he had been contacted by Harsco concerning Eagle Management's unpaid balance. A copy of this cure notice was sent by United States mail to Nova.

17. On December 13, 2003, Eagle Management responded to the Coast Guard's cure notice expressing its desire to complete the project successfully and addressing the contracting officer's other concerns. Eagle Management stated that it was currently disputing the amount claimed by Harsco. A copy of this letter was sent by United States mail to Nova.

18. On January 14, 2003, the Coast Guard contracting officer sent a letter to Eagle Management advising it that "the exterior painting has been completed satisfactorily and you may proceed with the removal of the scaffolding. You are reminded that interior work and outside concrete work is still outstanding."

19. On February 20, 2003, Harsco sent a letter to the Coast Guard contracting officer requesting a copy of the payment bond provided by Eagle Management.

20. On March 10, 2003, Metron sent a letter to the Coast Guard contracting officer informing him that it had completed its subcontract and had not been paid by Eagle Management. In this letter, Metron states that "we have taken your advice and have

notified the bonding company.”

21. On April 24, 2003, the Coast Guard contracting officer issued his third cure notice to Eagle Management directing Eagle Management to provide a revised Schedule of Progress no later than April 30, 2003, showing a completion date of June 1, 2003. Nova was mailed a copy of this cure notice.

22. On April 23, 2003, Metron filed a complaint in the United States District Court for the Eastern District of New York, Case No. CV-03-1952, against Eagle Management and Nova Casualty, seeking payment for work completed pursuant to Metron’s subcontract and seeking payment from Nova pursuant to the payment bond.

23. Prior to June 2003, the Coast Guard had received notice from both subcontractors, Harsco and Metron, that Eagle Management had not paid them for work they had performed on the contract.

24. On June 9, 2003, Eagle Management submitted its fourth partial payment invoice, requesting payment in the amount of $35,980. On this invoice, it again certified that “[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code.”

25. On June 16, 2003, Harsco filed a complaint in the United States District Court for the Eastern District of New York, Case

No. CV-03-2959, against Eagle Management and Nova Casualty, seeking payment for work completed pursuant to Harsco's subcontract and seeking payment from Nova pursuant to the payment bond.

26. Also on June 16, 2003, the contracting officer prepared a "Coast Guard Contract Payment Approval" form, approving payment of Eagle Management's fourth invoice in the amount of $25,303.50, and forwarded the form and invoice to the Coast Guard Finance Center in Chesapeake, Virginia. The form notes that the Coast Guard would retain $10,676.50 because of overbilling, incomplete work, and late performance.

27. On June 20, 2003, the contracting officer discovered gray blotches on the outside of the light tower, instead of a solid white color. He advised Eagle Management's representative on the site immediately of the deficiencies in the exterior painting of the light tower. As of June 20, 2003, the Coast Guard had actual knowledge of the "blotchy" appearance of the light tower.

28. The Coast Guard provided a copy to Nova of its letter to Eagle Management regarding the "blotchy" appearance of the light tower discovered by the Coast Guard on June 20, 2003.

29. On June 27, 2003, the contracting officer sent a letter to Eagle Management stating that he would reduce its payment amount on invoice number four to $9,303.50.

30. On the same day, the contracting officer sent an e-mail to the Coast Guard Finance Center asking them to reduce payment

number four by $16,000. The contracting officer also faxed a revised "Coast Guard Contract Payment Approval" form to the Coast Guard Finance Center, authorizing payment in the amount of $9,303.50, and authorizing retainage in the amount of $26,676.50 because of defective and incomplete work.

31. In July 2004, the contracting officer learned that the Coast Guard Finance Center had mistakenly made two payments to Eagle Management in July 2003, in the amounts of $9,303.50 and $25,303.50, leaving a contract balance of $5,373.

32. At no time prior to the July 2003 payments was the Coast Guard contacted by Nova or its attorney, asking the Government to withhold funds to Eagle Management, advising the Government that Eagle Management was not paying its subcontractors, or advising the Government that Eagle Management was in default.

33. The Coast Guard repeatedly attempted to obtain performance from Eagle Management to correct the painting deficiencies at the light tower throughout the Summer and Fall of 2003, but had no success.

34. On February 17, 2004, the contracting officer issued a final decision addressed to Eagle Management, stating that the Coast Guard would have the repainting of the light tower performed by another contractor pursuant to FAR §§ 52.246-12, 52.246-21, which were incorporated into the contract. Nova was sent a copy of this final decision.

35. In July of 2004, the Coast Guard sent a demand letter to

Eagle Management requesting the return of the $25,303.50 overpayment. Eagle Management made no response.

36. On September 23, 2004, the Coast Guard awarded a contract in the amount of $22,805, to Verrazano Contracting Company ("Verrazano"), to put two additional coats of paint on the light tower.

37. Verranzo's contract was later modified to reflect a total contract award amount of $23,898.50.

38. On October 8, 2004, the contracting officer issued a letter to Nova advising Nova of the September 23, 2004 award by the Coast Guard of a contract in the amount of $22,805 to Verranzano for the painting of the light tower. The letter indicated that upon completion of the Verranzano contract, the Coast Guard would make a claim for the excess procurement costs against Eagle Management and Nova, pursuant to the performance bond.

39. On November 18, 2004, the Law Offices of Neil B. Connelly, as attorney for Nova, forwarded a letter to the contracting officer requesting confirmation of the contract amount that the Coast Guard was retaining on the Eagle Management contract, and also requesting that the contracting officer provide Nova with copies of any documents upon which the Coast Guard relied for its determination that there were deficiencies in the painting of the light tower.

40. On November 26, 2004, the contracting officer responded to Mr. Connelly's November 18, 2004 letter. In that letter, the

contracting officer advised of his discovery that the Coast Guard Finance Center erroneously made an additional payment to Eagle Management in the amount of $25,303.40 in July 2003 without the contracting officer's authorization. The contracting officer also stated that he had made a written demand for the return of those funds to Eagle Management, as well as, to its attorney, and that no response was received to that demand. The contracting officer further stated his intention to make a demand upon Eagle Management for excess reprocurement costs in the amount of $22,204.05, and that should Eagle Management not comply with that demand, the Coast Guard would seek payment from Nova pursuant to its performance bond.

41. In the contracting officer's November 26, 2004 letter, he included photos taken before and after the repainting of the light tower was performed by Verrazano, which he indicated accurately demonstrated the defective contract work. The contracting officer further stated that the Coast Guard surmised that in the process of taking down the scaffolding, the subcontractor had performed "touch-ups" with either contaminated paint or paint of a different color.

42. On December 9, 2004, Mr. Connelly sent a letter to the contracting officer acknowledging receipt of his November 26, 2004 letter and the photographs included therewith. Mr. Connelly requested additional documentation from the Coast Guard, including copies of any expert's reports, testing results or

similar data regarding the cause of the two-tone appearance of the light tower. No response to that letter was issued by the contracting officer.

43. On February 14, 2005, the contracting officer issued another Final Decision setting forth findings of fact and his determination that Eagle Management and/or Nova are responsible for the additional cost incurred in the completion of the Coney Island Light Tower project in the amount of $22,245.05.

44. Nova never entered into a takeover agreement with the Coast Guard and never paid any amount on its performance bond.

45. On or about April 27, 2005, Nova settled Harsco's claim on the payment bond, for the amount of $50,000.

46. On or about August 11, 2005, Nova settled Metron's claim on the payment bond, for the amount of $58,000.

47. With these two payments, Nova satisfied all the claims on its payment bond.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Neil B. Connelly
NEIL B. CONNELLY
99 Church Street
White Plains, NY 10601
Tel: (914) 328-4100
Fax: (914) 684-0401

Attorney for Plaintiff

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7562
Fax: (202) 305-7643

OF COUNSEL:

ISAAC JOHNSON, JR.
Attorney
Office of Procurement Law
United States Coast Guard

Attorneys for Defendant

electronically filed,
May 19, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2006, a copy of the foregoing "JOINT STIPULATION OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad