**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NOVA CASUALTY COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 04-1665C<br>(Judge Lettow) |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, DC 20530
Telephone: (202) 305-7562
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

ISAAC JOHNSON, JR.
Attorney
Office of Procurement Law
United States Coast Guard
Washington, DC 20593-0001

electronically filed
June 30, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . iii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . 1

DEFENDANT'S BRIEF . . . . . 1

STATEMENT OF THE ISSUE . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature Of The Case . . . . . 2

II. Course Of Proceedings . . . . . 2

STATEMENT OF FACTS . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . 6

ARGUMENT . . . . . 7

I. Standard Of Review . . . . . 7

II. Because Nova Chose Not To Notify The Government Of Eagle's Likely Default Or To Request Withholding After The Coast Guard Notified Nova Of Possible Default Under The Payment Bond, The Government's Equitable Duties To Nova Were Not Triggered . . . . . 8

III. Excusing Nova From The Notice Requirement Is Inappropriate Because The Government's Payment Was Not Arbitrary And Capricious Under Balboa, Nor Was The Government Under Any Independent Contractual Duty To Withhold Payments To Eagle . . . . . 11

A. The Government's Payment Was Not Arbitrary And Capricious Under Balboa, Particularly Without Notice From Nova . . . . . 11

1. Balboa Factors One Through Three . . . . . 14

2. Balboa Factors Four And Five . . . . . 16

3. Balboa Factor Six . . . . . 17

4. Balboa Factor Seven . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5. Balboa Factor Eight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6. Summary Of The Balboa Factors . . . . . . . . . . . . . . . . . . . . . . . 20

B. The Government Was Under No Independent Contractual Duty To Withhold Payment To Eagle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV. The Government's Payment Did Not Materially Harm Nova Because The Payment Did Not Increase The Risk Nova Accepted When Nova Entered The Surety Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## CASES

Page

American Ins. Co. v. United States,
62 Fed. Cl. 151 (2004) . . . . . 8, 11, 20, 21

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 7

Argonaut Ins. Co. v. United States,
434 F.2d 1362 (Ct. Cl. 1970) . . . . . passim

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . passim

Doe v. United States,
48 Fed. Cl. 495 (2000) . . . . . 7

Fireman's Fund Ins. Co.,
909 F.2d at 498 (Fed. Cir. 1990) . . . . . passim

Hartford Fire Ins. Co. v. United States,
40 Fed. Cl. 520 (1998) . . . . . 14, 17

Lane Bryant, Inc. v. United States,
35 F.3d 1570 (Fed. Cir. 1994) . . . . . 7

Lumbermens Mut. Cas. Co. v. United States,
67 Fed. Cl. 253 (2005) . . . . . 8, 21, 22

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . 7

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . 21, 22

Nova Cas. Co. v. United States,
69 Fed. Cl. 284 (2006) . . . . . passim

Ransom v. United States,
17 Cl. Ct. 263 (1989) . . . . . 8, 13

Reliance Ins. Co. v. United States,
27 Fed. Cl. 815 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 13, 14

Royal Indem. Co. v. United States,
529 F.2d 1312 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

United Pacific Ins. Co. v. Roche,
380 F.3d 1352 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United Pacific Ins. Co. v. United States,
16 Cl. Ct. 555 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States Fid. & Guar. Co. v. United States,
676 F.2d 622 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 19

Westchester Fire Ins. Co. v. United States,
52 Fed. Cl. 567 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

STATUTES

40 U.S.C. § 3131(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

REGULATIONS

48 C.F.R. § 52.232-5 (May, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 20, 22

48 C.F.R. § 52.246-12 (Aug., 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| NOVA CASUALTY COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-1665C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order of April 24, 2006, defendant, the United States, respectfully requests the Court to grant summary judgment in defendant's favor because there are no genuine issues of material fact, and defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon plaintiff's amended complaint, the joint stipulation of facts filed by the parties on May 19, 2006, and the following brief.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUE

Whether the Government is entitled to summary judgment upon a claim by a surety resulting from an erroneous payment to the prime contractor, where the surety has neither provided notice to the Government of contractor default nor requested that the Government withhold payments to the contractor, and where the prime contract contains no mandatory retainage provision.

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff, Nova Casualty Company ("Nova"), a surety that issued payment and performance bonds on a contract between the United States Coast Guard ("Coast Guard") and a contractor, Eagle Management Enterprises ("Eagle"), alleges that a progress payment made in July 2003 by the Coast Guard to Eagle breached the payment terms of said contract, thereby prejudicing Nova with respect to its obligations under a payment bond. Pl. Am. Compl. ¶¶ 27-29.[1] Plaintiff seeks damages of not less than $25,303.50, the amount of the payment in question. Pl. Am. Compl. ¶ 29.

II. Course Of Proceedings

Initially, Nova brought suit to obtain the balance due Eagle from the Coast Guard and requesting a declaratory judgment releasing it from liability under the payment bond. Nova Cas. Co. v. United States, 69 Fed. Cl. 284, 285 (2006). After the Government filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, Nova filed both an opposition to that motion and an amended complaint alleging that a $25,303.50 progress payment made to Eagle breached the payment terms of the contract between the Coast Guard and Eagle, and appealing the contracting officer's decision to assess a claim against Eagle and/or Nova under the performance bond. Id. In response to the amended complaint, the Government again filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a valid claim. Id. After a hearing and the consideration of supplemental briefs, this Court held that: 1) Nova

[1] "Pl. Am. Compl.__" refers to the plaintiff's amended complaint, filed with the Court on April 8, 2005.

lacked standing under the Contracts Disputes Act, 41 U.S.C. § 601 et seq., to appeal the final decision of the contracting officer; 2) Nova had established jurisdiction under the Tucker Act, 28 U.S.C. § 1491, through the doctrine of equitable subrogation; and 3) Nova had stated a claim against the Government for the contract balance that allegedly should have been retained by the Government.[2] Id. at 299. The parties filed a joint stipulation of facts on May 19, 2006, and the remaining claim in Nova's amended complaint is addressed in this motion for summary judgment.

STATEMENT OF THE FACTS

For our statement of facts, we rely primarily upon the Joint Stipulation of Facts filed by the parties on May 19, 2006. However, a brief summary of relevant facts follows.

This dispute stems from contract number DTCGG1-01-C-3WK143 ("the contract"), dated September 6, 2001, in which Eagle agreed to remove lead paint from, and to prepare and paint all exterior and interior surfaces of, the Coney Island Light Tower (the "light tower") in Brooklyn, New York, in exchange for payments from the Coast Guard totaling $138,000. JSF ¶ 1.[3] FAR § 52.232-5, 48 C.F.R. § 52.232-5 (May, 1997), was incorporated into the contract,

---

[2] Because the Government is entitled to a setoff for the cost of procuring a successor contractor, the Court determined that Nova has stated a claim for, at most, "approximately $6,700. . . ." Nova Cas. Co., 69 Fed. Cl. at 296-97. The Court arrived at this figure as follows. Of the original contract balance of $138,000, a total of $98,020, net of retainage, was paid to Eagle under the first three invoices ($32,070, $28,500, and $37,450, respectively). An additional $34,606 was paid to Eagle under the fourth invoice, $9,303 properly and $25,303 in error, leaving a balance of $5,374. Assuming for purposes of this calculation only that the Government should have retained the improper payment, $25,303 would be added to the contract balance, leaving $30,677. However, because the Government is entitled to a set-off of $23,898.50 for the Verrazano contract price, that amount is subtracted from the contract balance, leaving a final balance of $6,778.50. Id. The Government disputes the assumption that, as a matter of law, it was contractually required to retain the $25,303 that it erroneously paid to Eagle.

[3] "JSF" refers to the Joint Stipulation of Facts, filed by the parties on May 19, 2006.

providing that the Coast Guard would make progress payments to Eagle and giving the Coast Guard discretion to withhold up to 10 percent of these payments as retainage for unsatisfactory progress. JSF ¶ 4. FAR § 52.246-21, 48 C.F.R. § 52.246-12 (Aug., 1996), was also incorporated into the contract, creating a one-year warranty of workmanship from Eagle to the Coast Guard JSF ¶ 34. Pursuant to the Miller Act, 40 U.S.C. § 3131(b), Eagle obtained performance and payment bonds from the plaintiff, Nova, in the amount of $138,000 each. JSF ¶ 3.

From the very beginning of the project, Eagle failed to perform in accordance with the terms of the contract; Nova was notified of Eagle's poor performance on multiple occasions. The Coast Guard issued its first cure notice to Eagle on April 15, 2002, because Eagle had not yet commenced work at the site according to its progress schedule, nor had it submitted a scaffolding and shrouding plan. JSF ¶ 8. The Coast Guard issued a second cure notice on December 5, 2002, because Eagle had failed to complete the contract on time and had not repaired certain damage to the contract site. JSF ¶ 16. Nova received a copy of this notice from the Coast Guard, JSF ¶ 16, and a copy of Eagle's written response directly from Eagle, JSF ¶ 17. On January 14, 2003, the Coast Guard sent a letter to Eagle advising the contractor that although the exterior painting had been completed satisfactorily, interior and exterior work was still outstanding, JSF ¶ 18, and then issued a third cure notice on April 24, 2003, demanding a completion date of June 1, 2003. JSF ¶ 21. Nova also received a copy of this cure notice from the Coast Guard, JSF ¶ 21. Meanwhile, the contracting officer withheld significant portions of the requested amounts on all four of the invoices Eagle submitted under the contract, dated June 12, 2002, September 16, 2002, November 1, 2002, and June 16, 2003, respectively, due to Eagle's overbilling and incomplete work. JSF ¶¶ 10, 12, 14, 26.

Nova was also notified of claims by subcontractors that Eagle was failing to meet its payment obligations. On November 22, 2002, Harsco Corporation ("Harsco"), a subcontractor to Eagle, alleged to the Coast Guard that Eagle owed them $63,349.83 for work completed on the light tower. JSF ¶ 15. The Coast Guard promptly notified Nova and Eagle of these allegations JSF ¶ 16. Eagle responded that it was disputing the subcontractor's claims, and sent a copy of the letter to Nova, JSF ¶ 17; Nova did not respond. JSF ¶ 32. On March 10, 2003, another subcontractor, Metron Environmental Limited ("Metron"), notified the Coast Guard that Eagle had not paid it amounts owed under its subcontract, and stated in the letter to the Coast Guard that it had "taken your [the Coast Guard's] advice and notified the bonding company [Nova]." JSF ¶ 20. Harsco and Metron filed separate suits in the United States District Court for the Eastern District of New York against both Eagle and Nova, Metron on April 24, 2003, JSF ¶ 22, and Harsco on June 16, 2003. JSF ¶ 25. At no point in the course of these correspondences and lawsuits did Nova or its attorney contact the Government asking it to withhold funds to Eagle, advising that Eagle was not paying its subcontractors, or advising that Eagle was in default. JSF ¶ 32.

On June 9, 2003, Eagle submitted its fourth invoice under the contract with the certification that "[p]ayments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification. . ." JSF ¶ 24. Eagle also made this representation on its three prior invoices. JSF ¶¶ 9, 11, 13. The Coast Guard subsequently authorized a progress payment of $25,303.50 in response to the invoice. JSF ¶ 26. Four days later, the Coast Guard became aware of the "blotchy" appearance of the exterior paint on the light tower, JSF ¶ 27, and because the contracting officer felt that the blotchy appearance was due to deficient work by

Eagle, he reduced the authorized payment to $9,303.50. JSF ¶¶ 27, 29. The Coast Guard Finance Center subsequently made a progress payment to Eagle in the amount of $9,303.50, but also erroneously made a payment to Eagle in the amount of $25,303.50. JSF ¶ 31.

At no time prior to this payment did Nova or its attorney contact the Coast Guard asking it to withhold funds to Eagle, advising that Eagle was not paying its subcontractors, or advising that Eagle was in danger of defaulting. JSF ¶ 32. The Coast Guard repeatedly attempted to obtain performance from Eagle to correct the painting deficiencies at the light tower throughout the Summer and Fall of 2003, but had no success. JSF ¶ 33. On February 17, 2004, the Coast Guard issued a final decision stating that the Coast Guard would have the repainting of the light tower performed by another contractor. JSF ¶ 34. The Coast Guard hired Verrazano Contracting Co. ("Verrazano") to repaint the tower at the final cost of $23,898.50. JSF ¶¶ 36-7.

Nova alleges that the Coast Guard's July, 2003 payment to Eagle of $25,303.50 constituted a breach of contract sufficient to impair Nova's suretyship, Pl. Am. Compl. ¶¶ 26-9, and requests that the Court award damages in that amount. Pl. Am. Compl. at pg. 7.

## SUMMARY OF THE ARGUMENT

The Government is entitled to summary judgment in its favor because the erroneous payment did not violate any contractual or equitable duty. First, the Government incurred no equitable duty to withhold progress payments during the course of performance because Nova failed to notify the Coast Guard of Eagle's potential payment problems. Before it receives notice from the surety, the Government is not a stakeholder in the contract balance, and thus is not in a position to monitor the likelihood of the contractor's default or make judgments about withholding for the purposes of protecting the surety's interests. Second, the Government's actions do not amount to abuse of discretion sufficient to support a claim for impairment of

suretyship. Not only did Nova fail to provide notice to the Coast Guard, but the Coast Guard notified Nova of Eagle's potential payment problems, only to receive no reply. Third, the erroneous payment did not prejudice Nova because it did not materially increase the risk Nova accepted. Nova issued the bonds fully aware that the contract did not mandate any withholding to protect the surety against contractor default. Accordingly, Nova had already contemplated and accepted the risk that the contract balance would be insufficient to cover its claims in case of Eagle's default. For these reasons, the Court should grant judgment in favor of the Government upon Nova's remaining claim.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate where the record shows that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing RCFC 56(c)). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Doe v. United States, 48 Fed. Cl. 495, 499 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). However, disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. Id. (citing Anderson, 477 U.S. at 247-48, and Lane Bryant, Inc. v. United States, 35 F.3d 1570 (Fed. Cir. 1994)).

Summary judgment is appropriate in this matter where the parties have agreed by stipulation to all of the relevant facts.

II. Because Nova Chose Not To Notify The Government Of Eagle's Likely Default Or To Request Withholding After The Coast Guard Notified Nova Of Possible Default Under The Payment Bond, The Government's Equitable Duties To Nova Were Not Triggered

It is well-established that a surety must notify the Government that a contractor is in default or cannot complete the contract in order to trigger any Government obligation in equity to withhold contract funds. The United States Court of Appeals for the Federal Circuit acknowledged as much in Fireman's Fund Insurance Co. v. United States when it stated, "[T]he government as obligee owes no equitable duty to a surety. . . unless the surety notifies the government that the principal has defaulted under the bond." 909 F.2d 495, 498 (Fed. Cir. 1990). Accord Balboa Ins. Co. v. United States, 775 F.2d 1158, 1164 (Fed. Cir. 1985) ("When a surety has informed the Government that the contractor is in default, the Government has an obligation to take reasonable steps to determine for itself that the contractor had the capacity and intention to complete the job.") (citations omitted) (emphasis added)); see also Lumbermens Mut. Cas. Co. v. United States, 67 Fed. Cl. 253, 255 (2005); Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567, 576 (2002); Reliance Ins. Co. v. United States, 27 Fed. Cl. 815, 826-27 (1993); Ransom v. United States, 17 Cl. Ct. 263, 273-74 (1989) (aggregating cases). This Court acknowledged the same in its earlier opinion in this case by stating, "[o]rdinarily, a surety must give notice to the government before the government is obliged to hold the remaining contract funds. . . ." Nova Cas. Co., 69 Fed. Cl. at 297 (citing American Ins. Co. v. United States, 62 Fed. Cl. 151, 155 (2004)).

This general rule of notice serves the primary purpose of allocating responsibility for predicting default to the party who will ultimately shoulder the cost of default, the surety. Unlike the Government, who is not a stakeholder in the contract balance until it is notified of potential default, Balboa, 775 F.2d at 1161, the surety's financial stake in avoiding default gives it a strong

incentive to monitor the contractor appropriately. Requiring the surety to notify the Government of impending default thus releases the Government from having to act as a trustee of the surety's interests, and in doing so, properly forces the surety to protect itself. Fireman's Fund Ins. Co., 909 F.2d at 499 ("[The surety] simply cannot rely on. . . the government to protect its interests. By definition and agreement, the surety protects the government's interest, not the other way around. . . . Only when the surety may be called upon to perform. . . should the government owe it any duty. The surety knows best when this may occur; consequently, only notice by the surety triggers the government's equitable duty.").

Furthermore, the general rule of notice provides an important marker that allows all parties to identify when the Government's equitable duties have begun; without the rule, the Government would not know when its equitable duties have been triggered and would thus be forced to withhold payments at the first sign of any problem or dispute with the contractor. This uncertainty would create an inefficient and time-consuming process for all parties, ultimately resulting in a higher rate of contractor default due to delayed or insufficient payment. Moreover, forcing the Government to protect itself by withholding payments prematurely would undermine the clearly-recognized principle that the Government must be afforded leeway in administering contracts so it can effect the timely and efficient completion of the work. See, e.g., Fireman's Fund Ins. Co., 909 F.2d at 498; Balboa, 775 F.2d at 1164 (citing Argonaut Ins. Co. v. United States, 434 F.2d 1362, 1367-68 (Ct. Cl. 1970) and United States Fid. & Guar. Co. v. United States, 676 F.2d 622, 628 (1982)); Nova Cas. Co., 69 Fed. Cl. at 299.

It is undisputed that Nova failed to adhere to the general rule of notice: Nova neither provided notice of default to the Coast Guard nor requested that the Coast Guard retain a portion of the contract balance to secure Nova's surety interests prior to the July 2003 payment to Eagle.

Nova had ample opportunity to provide such notice. Not only had both Metron and Harsco filed suit against Eagle for nonpayment, but Nova had been advised of these disputes on multiple occasions by Metron, Harsco, and even directly by the Coast Guard. Also, Nova was aware of the multiple performance difficulties that the Coast Guard had with Eagle throughout the course of the contract, having received copies of two cure notices and having received notice of performance and payment problems on multiple other occasions. The Court of Federal Claims considered a directly analogous case in Westchester Fire Insurance Co., 52 Fed. Cl. 567 (2002). In that case, a surety who had bonded a Coast Guard contractor brought suit to recover a progress payment made to the contractor who was defaulting under the surety bonds. Id. at 576. As in this case, the Coast Guard in Westchester Fire had notified the surety of the contractor's difficulties by copying it on a cure notice and other documents, yet the surety did not request withholding. Id. at 576. Finding that "the surety. . . had every opportunity to give notice to the Coast Guard of any potential default. . . and to request that further payments to the contractor be withheld," the Court held that "the government's equitable duty to act with reasoned discretion toward the surety was never triggered." Id. at 576 (citing Fireman's Fund Ins. Co., 909 F.2d at 498) (internal quotations omitted). Moreover, the Court reasoned that the surety's silence in the face of the possible contractor default led to the "logical conclusion" that "at the time the last progress payment was made, [the surety] found nothing improper in it." Id. at 578. The same analysis applies here: because Nova chose not to request withholding from the Coast Guard to protect its surety interests under either the performance bond or the payment bond, the logical conclusion for the Coast Guard to have drawn was that the surety found nothing improper in the further depletion of the contract balance in July 2003. Therefore, absent notice, the

Government's equitable duties to Nova were not triggered, and it was not obligated to retain any of the contract balance for Nova's benefit.

III. Excusing Nova From The Notice Requirement Is Inappropriate Because The Government's Payment Was Not Arbitrary And Capricious Under Balboa, Nor Was The Government Under Any Independent Contractual Duty To Withhold Payments To Eagle

A. The Government's Payment Was Not Arbitrary And Capricious Under Balboa, Particularly Without Notice from Nova

As this Court noted in its earlier opinion in this matter, the Federal Circuit has recognized a narrow exception to the notice requirement in cases where the Government "abuse[s] its discretion in making progress payments, that. . . could be viewed as an impairment of plaintiff's suretyship and give rise to damages." Nova Cas. Co., 69 Fed. Cl. at 298 (citing American Ins. Co., 62 Fed. Cl. at 157) (internal quotations omitted); see also Argonaut Ins. Co., 434 F.2d at 1368 ("During the performance of the contract, the Government has a duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract."). However, the Federal Circuit and this Court have traditionally granted this exception sparingly because applying the exception risks contravening the Federal Circuit's established precedent mandating the notice requirement. See, e.g., Reliance Ins. Co., 27 Fed. Cl. at 827 (declining to waive the notice requirement due to Federal Circuit precedent). Courts have gone to great lengths to narrow the exception to ensure its acceptability, stressing the "unusually heavy burden" on the plaintiff to prove abuse of discretion, see, e.g., Balboa, 775 F.2d at 1164; Royal Indem. Co. v. United States, 529 F.2d 1312, 1320 (Fed. Cir. 1985); Reliance Ins. Co., 27 Fed. Cl. at 826 (describing the standard as "arbitrary and capricious")); the Government's need for leeway in administering contracts, see, e.g., Fireman's Fund Ins. Co., 909 F.2d at 498; Nova Cas. Co., 69 Fed. Cl. at 299; and the primacy of

the Government's interest in "the timely and efficient completion of the work" before the contract is completed, Balboa, 775 F.2d at 1164 (citing Argonaut Ins. Co., 434 F.2d at 1367-68 and United States Fid. & Guar. Co., 676 F.2d at 628) (internal quotations omitted).

The Coast Guard's mistaken payment to Eagle falls far short of the "abuse of discretion" and "arbitrary and capricious" standards used by the Federal Circuit. In Balboa, the Federal Circuit listed eight factors it deemed "important in determining whether the Government has exercised reasonable discretion in distributing funds. . . ." Balboa, 775 F.2d at 1164. Those factors are:

1) Attempts by Government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job.

2) Percentage of contract performance completed at the time of notification by the surety.

3) Efforts of the Government to determine the progress made on the contract after notice by the surety.

4) Whether the contract was subsequently completed by the contractor (not conclusive, but relevant to show the reasonableness of the contracting officer's determination of the progress on the project).

5) Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the Government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that reaches them furthers the objectives of the surety as well as those of the Government).

6) Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government.

7) Whether the Government's action violates one of its own statutes or regulations.

8) Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor.

Id. at 1164-65 (citations omitted) (emphasis added).

In applying these factors, the Federal Circuit has generally made clear that notice by the surety is a prerequisite to the Balboa test. Id. at 1164 (introducing the factors by saying, "when a surety has informed the Government that the contractor is in default, the Government has an obligation to take reasonable steps to determine for itself that the contractor had the capacity and intention to complete the job" (internal quotations omitted)); see also Reliance Ins. Co., 27 Fed. Cl. at 826-27 ("[T]he eight point test in Balboa should be applied only if notice by the surety is given to the government") (citing Fireman's Fund Ins. Co., 909 F.2d at 498). The textual repetition of the notice requirement in the factors themselves further emphasizes the Federal Circuit's commitment to the notice requirement.[4] Because Nova did not give notice to the Coast Guard of Eagle's possible default, the Balboa test should not apply and the Government's decision not to withhold should be considered reasonable as a matter of law. See Reliance Ins. Co., 27 Fed. Cl. at 826-27 (refusing to apply the Balboa test and granting the Government's motion to dismiss where the surety did not give notice).

Moreover, the facts in this case do not rise to the "extreme" abuse of discretion the Court found in United Pacific Ins. Co. v. United States, 16 Cl. Ct. 555, 558 (1989). In United Pacific, the Air Force had paid for switchgears and generators before the contractor had even taken title to the components, much less assembled them, and the Air Force failed to inquire into the

[4] The United States Claims Court did apply the Balboa factors where the surety in question had not provided notice to the Government in United Pacific Insurance Co. v. United States, 16 Cl. Ct. 555, 558-60 (1989), but that case was decided before Fireman's Fund Insurance Co., and subsequent decisions have declined to follow it. See, e.g., Ransom, 17 Cl. Ct. at 273 n.5 ("To the extent United Pacific stands for the proposition that notice from the surety is not necessary, the court respectfully disagrees."); Reliance Ins. Co. 27 Fed. Cl. at 827 ("Th[is] case[], although persuasive, [is] not binding on this court. . . .").

contractor's certifications of progress that clearly contradicted the observed status of the job. Id. at 556. Citing the Air Force's "callous failure" to notice that the components were "not even a twinkle in [their] creator's eye" and would not be delivered to the job site until one year after defendant paid for it, the Court determined that the Government "could not have been put on clearer notice that there were problems" with the contractor's performance, practiced "unbelievable disregard of prominent warning signals," and had "grossly violated its own contract" so as to "topple[] the equitable scales in plaintiff's favor." Id. at 556, 57, 58.

By comparison, an application of the Balboa factors to this case clearly shows that no abuse of discretion occurred here; on the contrary, the Government's actions fall far short of the "arbitrary and capricious" standard.

1. Balboa Factors One Through Three

> 1) Attempts by Government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job.
>
> 2) Percentage of contract performance completed at the time of notification by the surety.
>
> 3) Efforts of the Government to determine the progress made on the contract after notice by the surety.

Balboa, 775 F.2d at 1164 (citations omitted) (emphasis added).

Because all three of these factors explicitly require notice, it is not clear that any is directly applicable to this case, nor is it clear at what point the Court should deem notice to have been made should it attempt to apply them.[5]

---

[5] It is well-established that constructive notice is not enough to trigger the Government's equitable obligation to a surety. See, e.g., Reliance Ins. Co., 27 Fed. Cl. at 827-28 (rejecting constructive notice argument (citing Fireman's Fund Ins. Co., 909 F.2d at 499)). Nor is notice from a subcontractor sufficient to trigger the Government's duty. Hartford Fire Ins. Co. v. United States, 40 Fed. Cl. 520, 523 (1998), aff'd 185 F.3d 885 (Table) (Fed. Cir. 1999). In

Even if applied, however, all three factors support the Government's position. The first factor focuses on whether the Coast Guard could have reasonably concluded that Eagle intended to complete the project and honor its payment obligations, and on whether the Coast Guard made sufficient attempts to find out whether Eagle intended to do so. At the time of the Coast Guard's July 2003 payment, Eagle had successfully completed a substantial portion of the project: using the cost of Verrazano's contract as the measure for unfinished work, Eagle had completed over 80 percent of the contract without any significant quality problems.[6] In light of the 80 percent completion, the Coast Guard could reasonably have believed that Eagle had the capacity to cure the blotchy exterior paint work. Moreover, the Coast Guard had attempted to determine whether Eagle had the capacity and intent to complete the job by sending cure notices to them, by notifying Nova of potential payment problems, and by repeatedly attempting to obtain performance from Eagle in the months after the payment. These facts distinguish this case from United Pacific, where the Government knowingly paid "more than half" of the contract price for items that had not yet been received or assembled by the contractor. 16 Cl. Ct. at 556.

The second factor focuses on the importance of the Government's interest in completing the contract in a timely manner. Id. at 558 ("As a project progresses, more deference must be afforded [the Government's] decisions since its stake in the contractual outcome increases as the completion date nears."). Again using the Verrazano contract as the measure for unfinished work, the contract was already more than 80 percent complete, making the Coast Guard's interest

---

absence of notice from the surety, constructive notice, or third party to notice, the Court lacks a clear way to limit the surety's claim for failure to withhold, and thus has a strong policy reason not to allow it.

[6] $23,898.50 divided by $138,000 equals 17.3 percent of the contract unfinished.

in timely completion particularly strong. Moreover, the payment in question was approximately equal to the amount eventually required for Verrazano to complete the work, suggesting that Eagle could have been expected to use the payment to finance the project's completion.

The third factor inquires into the Government's attempts to finish the contract on time. This factor weighs heavily in the Coast Guard's favor. Before the payment in question, the Coast Guard required periodic certifications from Eagle that the work had progressed according to the contract, and after the payment the Coast Guard continued to monitor the project's progress well enough to determine that Eagle would not correct the deficient paint work. Accordingly, the Coast Guard closely monitored contract performance.

2. Balboa Factors Four And Five

> 4) Whether the contract was subsequently completed by the contractor (not conclusive, but relevant to show the reasonableness of the contracting officer's determination of the progress on the project).
>
> 5) Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the Government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that reaches them furthers the objectives of the surety as well as those of the Government).

Balboa, 775 F.2d at 1164-65 (citations omitted).

Factors four and five both inquire into the ultimate efficacy of the payments; a fair reading suggests that both weigh against the Government's position. However, both factors are specifically limited inquiries. Factor four is explicitly "not conclusive," but instead encourages the court to use hindsight to double-check the reasonableness of the Government's decision to make the payment. Here, Eagle's eventual failure to complete the contract was not clearly predictable in July 2003 given the fact that Eagle had already completed over 80 percent of the

project. Factor five focuses on the Government's attention to any duty it owes to protect the surety. While it remains the Government's position that no equitable duty existed without notice from the surety, for the purposes of this factor, the Government notes that because the July, 2003 payments could have financed the completion of the project and the payment of the subcontractors, and because Nova had not notified the Coast Guard of any elevated or unacceptable risk of Eagle's default, the $25,303.50 payment can reasonably be interpreted to have been in the interest of the all parties to the contract, including the surety.

3. Balboa Factor Six

> 6) Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government.

Balboa, 775 F.2d at 1165 (citations omitted).

On its face, this factor appears to weigh in the plaintiff's favor. The Coast Guard was first contacted by Harsco as early as November 22, 2002.[7] However, these warning signs were greatly mitigated, if not overwhelmed, by the fact that Nova chose not to respond to notices that Nova might be in default under the payment bond. In United Pacific, the Court relied upon its finding that the Government "unquestionably knew of [the contractor's] financial difficulties," that it "could not have been put on clearer notice that there were problems," and that it had practiced "unbelievable disregard of prominent warning signals" of default. 16 Cl. Ct. at 559 (emphasis added). In contrast, this case presents a different situation because Eagle certified that it was making payments to subcontractors on every invoice, and Eagle stated that it disputed the

[7] Notice from a subcontractor is insufficient to trigger the Government's equitable duty to the surety. Hartford Fire Ins. Co., 40 Fed. Cl. at 523; See also Nova Cas. Co., 69 Fed. Cl. at 297 n.15.

amount claimed by Harsco. JSF ¶¶ 9, 11, 13, 17, 24. Moreover, despite having been made aware of Eagle's possible payment and performance problems, Nova chose not to give notice to the Coast Guard nor request that the Coast Guard retain contract funds, thereby contradicting and undermining any indications that Eagle might default.

4. Balboa Factor Seven

> 7) Whether the Government's action violates one of its own statutes or regulations.

Balboa, 775 F.2d at 1165 (citations omitted).

The seventh factor, insofar as it relates to the reasonableness of the Government's exercise of discretion, is primarily an inquiry into the Government's own interests: if a payment violates one of its own statutes or regulations, the payment is more likely to be contrary to the Government's interests, and thus unreasonable. The Coast Guard's July 2003 payment of $25,303.50 to Eagle was concededly erroneous, as it was made without the authorization of the contracting officer as required under FAR § 52.232-5. However, under the circumstances, this alone does not show that the payment was contrary to the Coast Guard's interests at the time. The Coast Guard – and the surety – had a strong interest in Eagle completing the project, and the July 2003 payment could have been used to do so. Furthermore, the Coast Guard was under no contractual duty to withhold payment from Eagle. Therefore, although the contracting officer did not authorize the $25,303.50 payment, that action is not sufficient to establish that the Coast Guard acted contrary to its own interests, and thus it is not sufficient to show that the Coast Guard abused its discretion. Cf. United Pacific Ins. Co. 16 Cl. Ct. at 560 (finding that "the defendant grossly violated its own contract" in "total disregard of the equitable duty owed to the surety" such that "[t]his factor greatly favors plaintiff's position.") (emphasis added).

5. Balboa Factor Eight

8) Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor.

Balboa, 775 F.2d at 1165 (citations omitted).

The eighth factor inquires into the reasonableness of the Coast Guard's decision to make a progress payment rather than use the money to hire a successor contractor to repaint the light tower. Clearly, the Government would only need to inquire as to a successor after a prime contractor has defaulted, so this factor is primarily applicable where a contractor has already defaulted.[8] The United Pacific court explicitly recognized this limitation, reasoning, "[t]his factor's relevance is limited by its applicability to cases dealing with a defaulting contractor. Because this action involves the propriety of a progress payment, the factor has little significance." 16 Cl. Ct. at 560. The same reasoning applies here: at the time of the payment, Eagle was not in default, so the Coast Guard did not have reason to solicit bids from successor contractors. Furthermore, the fourth invoice received by the Coast Guard from Eagle was only for a progress payment, it was not for final payment. See JSF ¶¶ 14, 24. If the eighth factor is applied nonetheless, the Government notes that its weight is indeterminate because the record does not reveal when the Coast Guard first inquired into the availability and cost of a successor

[8] The three cases cited as authority for this factor in Balboa all involve contractors in default, thus supporting the claim that the factor is primarily applicable where a contractor has already defaulted, see Balboa, 775 F.2d at 1165: United States Fidelity & Guaranty dealt with a contractor who had declared himself in default to both its surety and the government, 676 F.2d at 624-26; Royal Indemnity considered a contractor who declared himself in default to its surety in a document subsequently shared with the government, 529 F.2d at 1315; and Argonaut Insurance considered a dispute where the surety had requested that the government terminate the contract due to the contractor's failure to pay its laborers and materialmen, 434 F.2d at 1369.

contractor. Given the factor's limited applicability, however, the uncertainty of its weight is not material to the determination of the Coast Guard's reasonableness.

6. Summary Of The Balboa Factors

In summary, three of the Balboa factors (factors one, two, and three) weigh firmly in favor of the Government, three weigh minimally-to-moderately in favor of the plaintiff (factors four, five, and six), one does not clearly favor either party (factor seven), and one is either inapplicable or immaterial (factor eight). Moreover, three of the five factors the Court relied upon most heavily to find abuse of discretion in United Pacific (factors one, two, and three) support the Government's position in this case, one is unclear as to which party it supports (factor six), and the facts applicable to the seventh factor here fall far short of the abusive circumstances of United Pacific. The Coast Guard's actions should therefore not be deemed arbitrary and capricious under Balboa.

B. The Government Was Under No Independent Contractual Duty To Withhold Payment To Eagle

As this Court has acknowledged, the withholding provisions of FAR § 52.232-5(e), incorporated into the contract, are entirely discretionary. Nova Cas. Co., 69 Fed. Cl. at 298.[9] This case should be distinguished on this point from numerous cases where the Government has been held liable for payments made to contractors that breached mandatory withholding

[9] Moreover, it is well-settled law that the Court may not imply a contractual duty to withhold progress payments. See, e.g., American Ins. Co., 62 Fed. Cl. at 154 ("[I]t is beyond cull that the government does not owe the surety a contractual duty not to release funds to a contractor" where "the documents and facts of the record. . . neither expressly nor implicitly establish the existence of an independent contract, and that there was no other evidence that the government undertook any obligation to the surety." (citing Fireman's Fund Ins. Co., 909 F.2d at 499; United Pacific Ins. Co. v. Roche, 380 F.3d 1352, 1355-56 (Fed. Cir. 2004)) (additional citations omitted).

provisions in the contract. First among these cases is National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997), where the Government failed to withhold a contractually required percentage of the contract balance for the benefit of the surety. Indeed, the mandatory contract language in National Surety was essential to the court's holding in that case: the court found that the breach in the retainage provision materially increased the contemplated and accepted risk to the surety, and as such amounted to the impairment of the bonding company's suretyship. Id. at 1543-47. In this case, where the contract terms were entirely discretionary, no such obligation arose for the Coast Guard, and therefore, no such duty was breached by the payment in question. Accord American Ins. Co., 62 Fed. Cl. 151 (interpreting contract language identical to this case and holding that the Government did not impair suretyship status of surety by making progress payments to defaulting contractor where contract language authorized making payments in full despite the contractor's lack of progress); see also Lumbermens Mut. Cas. Co., 67 Fed. Cl. at 255 ("If the contract's terms are permissive or if they provide the contracting officer more discretion, the Government's duty to the surety may be less."); Argonaut Ins. Co., 434 F.2d at 1368-69 (holding that payments to a defaulting contractor were not abuse of discretion where the terms of the contract conferred discretion onto the contracting officer, and where that discretion had not been abused).

## IV. The Government's Payment Did Not Materially Harm Nova Because The Payment Did Not Increase The Risk Nova Accepted When Nova Entered The Surety Agreement

When a surety bonds a contract, it assumes the level of risk created by the terms therein. The Federal Circuit has thus held that the Government owes a duty to the surety "to administer the contract. . . in a way that does not materially increase the risk that was assumed." National Surety Corp., 118 F.3d at 1546. In National Surety, the Federal Circuit held that a bilateral

contract modification between the Government and a contractor to expand the scope of a project might have materially increased the contractor's risk of default, potentially breaching the Government's duty to administer the contract with regard for the surety's accepted level of risk. Id. at 1547.

In contrast, no similar increase in risk to Nova resulted from the Coast Guard's payment to Eagle. When it bonded the contract, Nova knew or should have known that the retainage provisions of FAR § 52.232-5(e) were entirely discretionary, and therefore that the Coast Guard could at any time pay out the entire contract balance to Eagle at its discretion. Nova therefore contemplated or should have contemplated the possibility that Eagle would default under the payment bond after the majority of the contract balance had been disbursed. Unlike National Surety, where the bilateral expansion of the project modified a term of the contract that the surety had relied upon when bonding the contract, in this case, Nova accepted the risk of a contract with no mandatory retainage provision, meaning that it could not have relied upon retainage to limit its risk. Accordingly, the Coast Guard's July 2003 progress payment did not materially increase the risk Nova accepted when Nova bonded the contract. See Lumbermens Mut. Cas. Co., 67 Fed. Cl. at 255-56 (distinguishing advance payments to a contractor under a contract incorporating the same discretionary language as here from the bilateral modification of mandatory terms in National Surety).

CONCLUSION

For these reasons, we respectfully request that the Court grant our motion for summary judgment, and dismiss the remaining count of plaintiff's complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, DC 20530
Telephone: (202) 305-7562
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

ISAAC JOHNSON, JR.
Attorney
Office of Procurement Law
United States Coast Guard
Washington, DC 20593-0001

electronically filed,
June 30, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of JUNE, 2006, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad