IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NOVA CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1665C |
| v. | ) | (Judge Lettow) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFF'S CROSS-MOTION FOR
JUDGMENT UPON STIPULATED FACTS

NEIL B. CONNELLY, ESQ.
Attorney for Plaintiff
99 Church Street
White Plains, NY 10601
(914) 328-4100

electronically filed
June 30, 2006

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………………………… 2

QUESTIONS PRESENTED …………….…………………………………… 2

Did the Contracting Officer or the government contravene the Federal Acquisition Regulations ("FAR") in distributing $25,303.50 to Eagle Management Enterprises, Inc. ("Eagle"), in July 2003, thereby impairing Nova's suretyship status? …………………………………………………. 4

Did the Contracting Officer and/or the government depart from the terms of the bonded contract by demanding additional painting of the Coney Island Light Tower beyond that called for by the bonded contract? ……………………………………………………………..… 4

CONCISE STATEMENT OF THE CASE ……………………………… 4

ARGUMENT ……………………………………………………..………….... 7

The Contracting Officer and the Coast Guard Have Admitted that it was a Mistake to Pay $25,303.50 to Eagle in July 2003, and Such a Mistake is a Violation of the Contracting Officer's and the Coast Guard's Obligations Under FAR …………………………………………….. 7

The Contracting Officer's Determination that Blotches on the Exterior of the Light Tower were the Result of Defective Workmanship by Eagle was Arbitrary and was Contradicted by the Contracting Officer's Finding in January 2003 that the Painting of the Lighthouse Complied with the Contract Specifications …………………………………. 12

CONCLUSION ……………………………………..………………..….. 19

# TABLE OF AUTHORITIES

## CASES

Page

Argonaut Insurance Co. v. United States, 434 F.2d 1362, 193 Ct.Cl. 483 (1970) ... 15

Balboa Insurance Co. v. United States, 775 F.2d 1158 (1985) ……………….. 15, 16

Campbell Plastics v. Brownlee, 389 F.3d 1243 (2004) ………………………… 5, 15

Keco Industries v. United States, 203 Ct.Cl. 566, 492 F.2d 1200 (1974) ……… 5, 15

McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1326 (1999) …….. 5, 15

National Surety v. United States, 118 F.3d 1542 (1997) …………………………. 15

United States Fidelity & Guaranty Co. v. United States,
201 Ct.Cl. 1, 475 F.2d 1377 (1973) ………………………………………. 15

United States Fidelity & Guaranty Co. v. United States,
230 Ct.Cl. 355, 676 F.2d 622, 630 (1982) ……………………………… 5, 15

## STATUTES

40 U.S.C. § 3131 (The Miller Act) …………………………………………….. 2

## FEDERAL ACQUISITION REGULATIONS

48 C.F.R. §52.232-5 ………………………………………………….… 4, 5, 16

48 C.F.R. § 52.246-12 ………………………………………………………. 13

48 C.F.R. § 52.246-21 …………………………………………………….. 13, 14

## TREATISES

Restatement of the Law, Third,
Suretyship and Guaranty, § 37 …...……………………..……... 6, 7, 8, 9

Restatement of the Law, Third,
Suretyship and Guaranty, § 42 …..…………………………...…….. 7, 8

Restatement of the Law, Third,
Suretyship and Guaranty, § 41 …..…………………………...…….. 9, 10

Plaintiff Nova Casualty Company ("Nova"), cross-moves for judgment against defendant The United States (the "government"), upon the Joint Stipulated of Facts filed with the court on May 19, 2006, the documents previously submitted to the court, and the relevant statutes, regulations, and case law. For the sake of brevity, and primarily because there are stipulated facts already before the court, a complete recitation of the underlying facts in this matter will not be set forth. References to the Joint Stipulation of Facts will appear as "Facts, par___".

## QUESTIONS PRESENTED

1. Did the Contracting Officer or the government contravene the Federal Acquisition Regulations ("FAR") in distributing $25,303.50 to Eagle Management Enterprises, Inc. ("Eagle"), in July 2003, thereby impairing Nova's suretyship status?

2. Did the Contracting Officer and/or the government depart from the terms of the bonded contract by demanding additional painting of the Coney Island Light Tower beyond that called for by the bonded contract?

## CONCISE STATEMENT OF THE CASE

This suretyship case arises out of a contract (No. DTCGG1-01-C-3WK143, hereinafter the "Contract") entered into between the United States Coast Guard and Eagle Management Enterprises, Inc. ("Eagle") on September 6, 2001. The Contract called for

Eagle to, *inter alia*, remove lead paint from, then prepare and paint, all exterior and interior services of the Coney Island Light Tower in Brooklyn, New York (the "Project"). The Contract price was $138,000.00. (Facts, pars. 1 and 2). In accordance with the requirements of the Contract and the Miller Act, 40 USC § 3131(b), and at Eagle's request, Nova issued performance and payment bonds for Eagle, as Principal, in favor of the United States, as Obligee, in the respective penal sums of $138,000.00. (Facts, par 3).

Nova commenced this action seeking to compel the government to pay to Nova the Contract balance remaining in the government's hands, including sums the government improperly paid to Eagle and another contractor. The government moved to dismiss Nova's causes of action for lack of subject matter jurisdiction and failure to state a valid claim. The court conducted a hearing on the government's motion on June 27, 2005. Following the filing of Supplemental Briefs and Materials by the parties, Judge Lettow issued his Opinion and Order on January 12, 2006, granting in part and denying in part the government's motion. In summary, the court found that Nova did not have standing to appeal from the Contracting Officer's Final Decision of February 14, 2005, but that Nova did have standing under the doctrine of equitable subrogation and the Tucker Act to assert a claim for the contract balance by reason of Nova's satisfaction of all payment bond claims arising out of the underlying contract. (Facts, par. 47). The parties then agreed, with the Court's consent, to submit their dispute for resolution by Judge Lettow by means of cross-motions and a Joint Stipulation of Facts.

To be determined by the court on the parties' cross motions is whether, under the particular facts of this case, Nova should be paid the remaining contract balance by the

government, as a matter of law. It is Nova's position that the actions of the government and the Contracting Officer in issuing certain payments to Eagle and Verrazano Contracting Company from the Contract balance are a deviation from the terms of the bonded contract and an abuse of the Contracting Officer's discretion. The payments at issue impaired Nova's suretyship status, entitling Nova to payment of the amounts improperly paid and the remaining Contract balance.

## ARGUMENT

### I. <u>The Contracting Officer and the Coast Guard Have Admitted that it was a Mistake to Pay $25,303.50 to Eagle in July 2003, and Such a Mistake is a Violation of the Contracting Officer's and the Coast Guard's Obligations Under FAR.</u>

On January 14, 2003, the Contracting Officer, Mr. O'Boyle, notified Eagle that the exterior painting of the Coney Island Light Tower (the "Light Tower") had been performed satisfactorily. (Facts, par. 18). Five months later, on June 20, 2003, Mr. O'Boyle discovered "blotches" on the exterior of the Light Tower. (Facts, par. 27). On that same day, Mr. O'Boyle informed Eagle's on site representative of the "deficiencies in the exterior painting". (Facts, par. 27). Thereafter, in July 2003 the government paid Eagle $25,303.50 without Mr. O'Boyle's authorization. (Facts, par. 40).

FAR §52.232-5, "Payments under fixed/price construction contracts", was incorporated into the Contract, and reads, in pertinent part, as follows:

(a) *Payment of price*. The Government shall pay the Contractor the contract price as provided in this contract.

(b) *Progress payments*. The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.

It is not disputed that the payment to Eagle was a mistake by the Government. Plaintiff's opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") Exhibit E (Letter from O'Boyle to Neil B. Connelly, counsel for Nova, dated November 26, 2004). The payment violated FAR § 52.232-5(b), which calls for the government to make progress payments for estimates of work "as approved by the Contracting Officer".

Mr. O'Boyle has admitted that the July 2003 payment was not made with his approval. (Facts, par. 40). Applying relevant case law to the undisputed facts in this matter compels the finding that the payment by the government to Eagle in July 2003 in the sum of $25,303.50 was an abuse of discretion by the government and the Contracting Officer that impaired Nova's suretyship status, thereby entitling Nova to a recovery of that sum in an accounting of the Contract price.

In considering Nova's claim that the Contracting Officer abused his discretion, four different factors may be considered by the court. They are, (1) whether the Contracting Officer acted with subjective bad faith; (2) whether the Contracting Officer had a reasonable, contract-related basis for his decision; (3) the amount of discretion given to the Contracting Officer; and (4) whether the Contracting Officer violated a statute or regulation. Campbell Plastics v. Brownlee, 389 F.3d 1243, 1250 (Fed.Cir. 2004); McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1326 (Fed.Cir. 1999); United States Fid. & Guar. Co. v. United States, 230 Ct.Cl. 355, 676 F.2d 622, 630 (1982); Keco Industries v. United States, 203 Ct.Cl. 566, 492 F.2d 1200 (1974). As to whether or the payment to Eagle in July 2003 was an abuse of discretion, the fourth factor listed above is directly on point because the payment violated FAR § 52.232-5(b).

Restatement (Third) of Suretyship and Guaranty includes provisions that consider the relationship between the surety and the obligee in the context of risk assessment. Under certain circumstances, acts by the obligee that increase the risk of loss to the surety will discharge the surety on its bond. The following section of the Restatement is on point:

§ 37. Impairment of Suretyship Status

(1) If the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance, the secondary obligor is discharged as described in subsections (2) and (3), and the secondary obligor has a claim against the obligee as described in subsection (4). An act that increases the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance is an "impairment of suretyship status."

(2) If the obligee fundamentally alters the risks imposed on the secondary obligor by:

(a) releasing the principal obligor from a duty other than the payment of money (§ 39(c)(iii)); or

(b) agreeing to a modification of the duties of the principal obligor that either amounts to a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed on the secondary obligor prior to modification (§ 41(b)(i));

the secondary obligor is discharged from any unperformed portion of the secondary obligation as more fully set forth in those sections.

(3) If the obligee impairs the secondary obligor's recourse against the principal obligor by:

(a) releasing the principal obligor from a duty to pay money (§ 39(c)(ii));

(b) granting the principal obligor an extension of time for performance of its duties pursuant to the underlying obligation (§ 40(b));

(c) agreeing to a modification of the duties of the principal obligor, other than a release or an extension of time, that does not amount to a substituted contract or impose risks on the secondary obligor fundamentally different from those imposed on the secondary obligor prior to modification (§ 41(b)(ii));

(d) impairing the value of an interest in collateral securing the underlying obligation (§ 42);

(e) failing to institute an action before expiration of the statute of limitations governing the underlying obligation (§ 43); or

(f) any other act or omission that impairs the principal obligor's duty of performance, the principal obligor's duty to reimburse, or the secondary obligor's right of restitution or subrogation (§ 44);

the secondary obligor is discharged from its duties pursuant to the secondary obligation to the extent set forth in those sections in order to prevent the impairment of recourse from causing the secondary obligor a loss.

(4) If the obligee impairs the secondary obligor's suretyship status

(a) after the secondary obligor performs any portion of the secondary obligation; or

(b) before the secondary obligor performs a portion of the secondary obligation, if the secondary obligor then performs:

(i) without knowledge of such impairment;
(ii) for the benefit of an intended beneficiary who can enforce the secondary obligation not withstanding such impairment; or
(iii) under business compulsion;

the secondary obligor has a claim against the obligee with respect to such performance to the extent that such impairment would have discharged the secondary obligor with respect to that performance.

The unauthorized payment by the government to Eagle in July 2003 impaired Nova's suretyship status under Restatement (Third) Suretyship and Guaranty §37(3)(d), in that it impaired the value of the collateral (the Contract balance) securing the underlying obligation (the Contract). Restatement (Third) Suretyship and Guaranty §42, Impairment of Collateral, contains an illustration that is directly on point:

Illustration:

3. B agrees to construct a building for O for $400,000. S issues a performance bond to O pursuant to which S agrees to be jointly and severally liable with B on the obligation to O. B defaults on the construction project, and S completes construction. At the time of B's default, O had paid B $100,000 in accordance with the terms of the construction contract. As "return performance", the remaining $300,000 owed by O to B under the contract serves as security for B's underlying obligation. Payment of any portion of that $300,000 to B is a release of collateral constituting impairment of collateral.

The $25,303.50 payment issued by mistake to Eagle in July 2003 was an impairment of the collateral to which Nova was entitled upon the payment of claims under the payment bond issued for the Contract. Nova's claim is in accordance with Restatement (Third) Suretyship and Guaranty § 37(4)(b)(ii), that grants the surety a claim against the obligee where the impairment of collateral arises before the surety performs its obligations under the payment bond. Nova's demand for recovery from the United States of the improper payment by the government to Eagle in the sum of $25,303.50 should be granted.

**II. <u>The Contracting Officer's Determination that Blotches on the Exterior of the Light Tower were the Result of Defective Workmanship by Eagle was Arbitrary and was Contradicted by the Contracting Officer's Finding in January 2003 that the Painting of the Lighthouse Complied with the Contract Specifications.</u>**

As noted above, Judge Lettow ruled that Nova cannot challenge the Contracting Officer's final decision of February 14, 2005 due to a lack of subject matter jurisdiction. However, it is respectfully submitted that the modification to the Contract resulting from that Final Decision constitutes an impairment of Nova's suretyship status, entitling Nova to assert a claim for the amount paid to Verazzano Contracting under Restatement (Third) Suretyship and Guarantee § 37(4). The section of the Restatement that identifies this particular impairment of suretyship status is § 37(2)(b), which reads as follows: "If the obligee fundamentally alters the risks imposed on the secondary obligor by; (b) agreeing to a modification of the duties of the principal obligor that either amounts to a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed on the secondary obligor prior to modification (§ 41 (b) (I)); the secondary obligor is discharged from any unperformed portion of the secondary obligation as more fully set forth in those sections".

Adding two more coats of paint to the Light Tower was a material increase in the scope of work called for in the underlying Contract. The government's modification of the Contract does not relieve it of its obligation to make payment to Nova in the sum of $30,676.50, the remaining Contract balance as of June 2003. Restatement Third Suretyship and Guarantee § 41 (c) (ii) addresses this subject as follows: "If the modification of the underlying obligation changes the amount of money payable

thereunder, or the timing of such payment, the secondary obligor may perform the secondary obligation as though there had been no modification". In his January 12, 2003 Opinion and Order, Judge Lettow stated that Nova's claim against the government for funds that should have been retained is inferior in priority to the government's claim for reimbursement of amounts due under Nova's performance bond (Opinion and Order, page 16). But in order to establish a claim against Nova's performance bond, it must be shown that there has been a failure to perform the bonded Contract by the principal, Eagle. The government has not offered any proof on that key issue.

In reviewing the record before it, Judge Lettow noted that "the uncertainty as to the reasonableness of the Contracting Officer's action with respect to the progress payment made to Eagle in July 2003 is accentuated when one applies FAR 52.246-21 to the fact that on January 14, 2003, Mr. O'Boyle informed Eagle that the exterior painting had been performed satisfactorily, then six months later communicated to Eagle that there were deficiencies in the work performed. *See supra*, at 3. Based on the available record before the court, whether the Contracting Officer reasonably exercised his discretion is an unresolved question of fact." (Opinion and Order, page 19). The same uncertainty exists with respect to the reasonableness of the Contracting Officer's action in adding two coats of paint to the scope of the Contract without increasing the amount payable on the Contract for that extra work.

Mr. O'Boyle's January 14, 2003, letter is the only document in the record before the court that provides a clear finding of fact as to Eagle's performance of the exterior Light Tower painting. Mr. O'Boyle declared on January 14, 2003, as Contracting

Officer, that the exterior painting had been completed satisfactorily, but his November 26, 2004, letter to Neil B. Connelly, Nova's attorney, was not as factually specific. There, Mr. O'Boyle stated that, "The Coast Guard surmises that in the process of taking down the scaffolding, the subcontractor performed "touch-ups" with either contaminated paint or paint of a different color." The Coast Guard's "surmise", i.e., guess, concerning the cause of the two-toned, blotchy condition of the paint job stands in stark contrast to Mr. O'Boyle's earlier finding that the painting had been completed satisfactorily.

It is not disputed that a two-toned blotchy condition existed on the Light Tower in June 2003. Adding two more coats of paint to the Light Tower appears to have corrected that condition, although the current condition of the Light Tower is unknown. (Facts, par 41; see also the photographs attached to Mr. O'Boyle's November 26, 2004 letter, Pl.'s Opp. Ex. E). The issue is the cause of the blotchy condition on the exterior of the Light Tower. On November 18, 2004, Mr. Connelly, as attorney for Nova, asked Mr. O'Boyle for copies of any documents upon which the Coast Guard relied for its determination that there were deficiencies in the painting of the Light Tower. (Facts, par 39). In response to that request, Mr. O'Boyle provided photographs with his November 26, 2004 letter, showing the condition of the Light Tower before and after the addition of two coats of paint by Verrazano Contracting. (Facts, par 41). It was in Mr. O'Boyle's November 26, 2004 letter that he offered the Coast Guard's guess that the blotches on the Light Tower were caused by "touch-ups" by an unidentified subcontractor who used either contaminated paint or paint of a different color.

On December 9, 2004, Mr. Connelly again wrote to Mr. O'Boyle, this time acknowledging receipt of the photographs and Mr. O'Boyle's November 26, 2004 letter. Once again, Mr. Connelly requested documentation from the Coast Guard regarding its determination that the cause of the two-toned appearance of the Light Tower was deficiencies in Eagle's workmanship. No response to Mr. Connelly's December 9, 2004 letter was issued by the Contracting Officer. (Facts, par 42). The record before the court does not contain any expert's reports, witness statements, engineering studies, or other documentation to support the Contracting Officer's determination that Eagle, or one of its subcontractors, was responsible for the blotches on the Light Tower. It must be concluded that the Contracting Officer did not conduct any fact finding as to the cause of the blotches. Under such circumstances, the Contracting Officer's "surmise" as to the cause of the blotchy appearance on the Light Tower was completely arbitrary, and, therefore, an abuse of his discretion.

Eagle's argument that faulty contract specifications caused the blotchy appearance on the Light Tower was raised to the Contracting Officer in July 2003. (Pl.'s Opp. Ex. C; Contracting Officer's Final Decision, February 17, 2004, p.2) There is no record of any investigation by Mr. O'Boyle into the distinct possibility that the paint manufacturer's recommendation as to the type of paint or the number of coats of paint required to cover the newly sandblasted Light Tower was wrong. Failing to consider such a possibility is another arbitrary act by the Contracting Officer. To solve the problem of the blotchy condition on the Light Tower, the Contracting Officer demanded

that Eagle repaint the Light Tower, at Eagle's expense. Such a demand was an abuse of the Contracting Officer's discretion as spelled out in FAR.

The Contracting Officer refers to the Inspection of Construction in FAR § 52.246-12, as one of the sections upon which he relied in demanding that Eagle repaint the Light Tower. Although he does not identify the subsections of that FAR provision, it would appear he was referring to, at least, the following:

> 52.246-12
> (c) Government inspections and tests are for the sole benefit of the government and do not –
> (3) Constitute or imply acceptance; or
> (4) Affect the continuing rights of the government after acceptance of the completed work under (i) below.
>
> > (i) Unless otherwise specified in the contract, the government shall accept, as promptly as practicable after completion and inspection, all work required by the contract or that portion of the work the Contracting Officer determines can be accepted separately. Acceptance shall be final and conclusive except for latent defects, fraud, gross mistakes amounting to fraud, or the government's rights under any warranty or guarantee.

Eagle's painting of the exterior of the Light Tower passed the Contracting Officer's inspection and was accepted in January 2003. There is nothing in the record to indicate that the government's claims against Eagle were based on any allegations of fraud, gross mistakes amounting to fraud, or similar misconduct. Therefore, it appears that, although once again not particularized by the Contracting Officer, the basis for the government's claim against Eagle for the blotchy appearance of the Light Tower is based on either latent defect or the provisions of FAR § 52.246-21, Warranty of Construction. Latent defect in the application of the paint to the Light Tower has not previously been

raised by the government as the basis for the Contracting Officer's action. Turning, then, to FAR § 52.246.21, Warranty of Construction, the relevant provisions of that Regulation read as follows:

> (a) In addition to any other warranties in this contract, the contractor warrants, except as provided in par (i) of this clause that work performed under this contract conforms to the contract requirements and is free of any defect in equipment, material, or design furnished, or workmanship performed by the contractor or any subcontractor or supplier as any tier.
> (b) This warranty shall continue for a period of 1 year from the date of final acceptance of the work. If the government takes possession of any part of the work before final acceptance, this warranty shall continue for a period of one year from the date the government takes possession.
> (c) The contractor shall remedy at the contractor's expense any failure to conform, or any defect. In addition, the contractor shall remedy at the contractor's expense any damage to government owned or controlled real or personal property when that damage is the result of - -
> (1) The contractor's failure to conform to contract requirements; or
> (2) Any defect of equipment, material, workmanship, or design furnished….
> (i) Unless a defect is caused by the negligence of the contractor or subcontractor or supplier at any tier, the contractor shall not be liable for the repair of any defects of material or design furnished by the government nor for the repair of any damage that result from any defect in government-furnished material or design.

As noted above, the government did not conduct any investigation as to the cause of the blotchy appearance on the Light Tower. As such, the government has presented no factual basis for its "surmise" that Eagle's workmanship failed to conform with the terms of the contract, or that there was any defect in Eagle's workmanship. Only where there has been a defect caused by the negligence of the contractor or a subcontractor or supplier, or where there has been a failure to conform to the terms of the Contract, can the government assert a right under the Warranty of Construction section of FAR to demand that the contractor remedy deficiencies at the contractor's expense.

The standard of proof Nova must meet to establish an arbitrary and capricious disregard of the surety's interest is high. Balboa Insurance Company v. United States, 775 F.2d 1158, 1164 (Fed.Cir. 1985). However, the government owes an equitable "duty to exercise its discretion responsibly and to consider the surety's interests in conjunction with other problems encountered in the administration of the contract". Id., at 1164 (Quoting from Argonaut Insurance Co. v. United States, 434 F.2d 1362, 1368, 193 Ct.Cl. 483 (1970)). See also, National Surety v. United States, 118 F.3d 1542 (Fed.Cir. 1997); U.S Fid. & Guar Co. v. United States, 201 Ct.Cl. 1, 475 F.2d 1377 (1973).

The Contracting Officer's action, and the exercise of his discretion with respect to the repainting of the Light Tower, must be examined under the four factors established by the decisions from the United States Court of Appeals for the Federal Circuit and the Court of Claims, cited at page 5, above. Campbell Plastics v. Brownlee, 389 F.3d 1243, 1250 (Fed.Cir. 2004); McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1326 (Fed.Cir. 1999); United States Fid. & Guar. Co. v. United States, 230 Ct.Cl. 355, 676 F.2d 622, 630 (1982); Keco Industries v. United States, 203 Ct.Cl. 566, 492 F.2d 1200 (1974). Factors 1 (bad faith) and 4 (violation of a statute or regulation) would not appear to apply to the Contracting Officer's action in question. It falls to the court to then examine factors 2 (whether the Contracting Officer had a reasonable, contract-related basis for his decision), and 3 (the amount of discretion given to the Contracting Officer) in determining whether the Contracting Officer abused his discretion.

Without question, the Contracting Officer has an obligation as a government agent to see to the proper completion of the Project, and his discretion in that area is

broad. However, the Contracting Officer's duties do not permit him to overlook the rights of the Contractor or its surety, and his discretion is not unlimited. Balboa Insurance Company v. United States, 775 F.2d 1158, 1164 (Fed.Cir. 1985). There is nothing in the record to indicate that the Contracting Officer paid any heed at all to the Contractor's contention that the cause of the problem was a defect in the specified paint. It may well have been that the paint manufacturer's recommendations were at fault, and liability for the repainting of the Light Tower should have fallen to that party. The Contracting Officer's failure to consider that possibility was an arbitrary and capricious act, and did not reflect an exercise of prudent discretion in administering the Contract.

Nothing in the terms of the Contract or in FAR allows the Contracting Officer the power to make arbitrary determinations as to the cause of defective work on a construction project. Although the government unquestionably has broad powers in administering its contracts, those powers do not grant the Contracting Officer the right to compel additional work from a contractor without fair compensation.

## CONCLUSION

The payment by the government to Eagle in July 2003 violated the requirement in FAR § 52.232-5(b) that the Contracting Officer must approve progress payments to a contractor. That payment was an admitted mistake by the government and the funds must be credited to Nova. The determination by the Contracting Officer that Eagle's workmanship caused the blotchy appearance on the Light Tower was arbitrary and an abuse of the Contracting Officer's discretion. Contract funds cannot be taken by the government to pay for work that is not included in the scope of the bonded Contract.

Nova is entitled to judgment against the United States in the sum of $30,676.50, which is the amount of the Contract balance as of June 2003.

Respectfully submitted,

s/ Neil B. Connelly
Neil B. Connelly, Esq.
Attorney for Plaintiff
99 Church Street, 4th Floor
White Plains, New York 10601
914-328-4100
Fax 914-684-0401

Electronically filed: June 30, 2006

CERTIFICATE OF FILING

I hereby certify that on the 30th day of June 2006, a copy of the "PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON STIPULATED FACTS" was electronically filed with the U.S. Court of Federal Claims. I understand that notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

s/ Neil B. Connelly

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.